KEELY, APPELLANT, *v.* GREGG ET AL., RESPONDENTS.

(No. 2,143.)

(Submitted June 21, 1905. Decided July 29, 1905.)

*Public Lands—Fraud—Rights of Parties—Appeal—Mortgages —Foreclosure—Adjustment of Equities.*

Trusts—Fraud—Public Lands.
1. A trust cannot result in one of two persons for the benefit of the other, if they intended and agreed to obtain land from the government unlawfully and fraudulently; and the court, in such a case, in a suit between themselves as to the land, will leave the parties where it finds them.

Appeal—Questions Reviewable—Judgment not Appealed from.
2. Where a judgment of foreclosure subject to certain conditions was rendered against defendants, who did not appeal therefrom, the supreme court could not, on plaintiff's appeal from the part of the judgment imposing the conditions, consider whether the mortgage could be lawfully foreclosed in view of the invalidity of the contract out of which the conditions imposed by the lower court arose.

Mortgages—Foreclosure—Adjustment of Equities.
3. (On rehearing.) Where defendant and plaintiff's assignor had an accounting of all dealings between them, and defendant executed notes and a mortgage to secure the balance found due from him to his assignor, and it appeared, in a suit brought by plaintiff to foreclose the mortgage, that his assignor had held the record title to a separate tract of land not covered by the mortgage, in order to secure a sum which was afterward included in the accounting, and had agreed to convey such separate tract to defendant, but had not released such tract from its position as security, the court, in decreeing foreclosure, should adjust all equities arising out of the transaction, and require plaintiff, who had succeeded to his assignor's title to the separate tract, to convey such tract to defendant, on the payment by defendant of the sum which the separate tract was held to secure, or so much thereof as remained unpaid after foreclosure and settlement of the mortgage, together with interest, taxes, and assessments on such tract.

Public Lands—Fraud—Concealment of Equities—Rights of Parties.
4. (On rehearing.) The fact that a person perfecting the title to scrip land was acting as trustee for another, and that both he and his *cestui que trust* intended to conceal from the federal land office their true relations, does not preclude the enforcement of the trust, where all the facts were known to and considered by the government officials before issuing the patent, and the government knowingly and willingly conveyed the land to the trustee, leaving him and his *cestui que trust* to settle the equities between themselves in the courts after patent issued.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Thomas Keely against Joseph O. Gregg and James M. Burlingame, Jr., intervener. From the judgment rendered, in so far as it was in favor of defendants, and from an order denying a new trial, plaintiff appeals. Modified and affirmed.

*Mr. Fletcher Maddox,* for Appellant.

The new matter in defendant's answer could not be made the basis of a counterclaim. The defendant pleads the new matter in his answer as a "further defense and by way of cross-complaint and counterclaim." That the new matter does not in any sense constitute a defense would seem to require no argument. In order that new matter may constitute a defense it must defeat the plaintiff's case by the allegation of facts which show that notwithstanding the case alleged by the plaintiff, he has no right of recovery. The answer in the case at bar is merely an attempt to state an independent cause of action which the defendant might have presented had the plaintiff not commenced his suit. It in no way affects the plaintiff's cause of action. The use of the word "cross-complaint" is merely surplusage. Under the Montana Code no provision is made, as in California and some other states, for a cross-complaint, as such, but the rights of a defendant to affirmative relief are governed by the provisions of the statute in respect to counterclaims. (Code of Civil Proc., sec. 691.) Defendant's judgment on his counterclaim does not reduce or lessen this recovery, i. e., the judgment, by a single dollar. He seeks nothing more than to block the enforcement of this recovery by a demand which arises out of a different transaction from that set forth in the complaint. "A counterclaim when established must in some way qualify or must defeat the judgment to which the plaintiff is otherwise entitled." (*National Fire Insurance Co.* v. *McKay,* 21 N. Y. 191, 195; *Mattoon* v. *Baker,* 24 How. Pr. 329; *Waddell* v. *Darling,* 51 N. Y. 327, 330.) The result of defendant's counterclaim as allowed is that we have in one action a separate, independent judgment in favor of Keely against Gregg, and an-

other separate, independent judgment in favor of Burlingame and Gregg against Keely, neither of which judgments can be in any manner applied in diminution of the other.

One judgment alone is contemplated by the Code (Code of Civil Proc., secs. 1000, 1001), except where a several judgment is proper against several defendants (sec. 1002; see, also, Pomeroy's Remedies, sec. 747). Again, the defendant's so-called counterclaim is open to the objection that this alleged cause of action does not arise out of the contract or transaction set forth in the complaint. (Pomeroy's Remedies, sec. 752; Pomeroy's Code Remedies, sec. 163; *Bradley* v. *Thompson Smith's Sons,* 98 Mich. 449, 39 Am. St. Rep. 565, 57 N. W. 576, 23 L. R. A. 305; *Benham* v. *Connor,* 113 Cal. 168, 45 Pac. 258; *Stadler* v. *First Nat. Bank,* 22 Mont. 211, 213, 214, 74 Am. St. Rep. 582, 56 Pac. 111; *Raymond* v. *Hogan,* 159 N. Y. 548, 54 N. E. 1094; *Harrisburg T. Co.* v. *Shufeldt,* 87 Fed. 669.) Again, the defendant's so-called counterclaim must be rejected because it does not exist in favor of the defendant pleading to it. "The defendant cannot set up and maintain as a valid counterclaim a right of action subsisting in favor of another person, even though there may be close legal relations between himself and such other person." (Pomeroy's Remedies, secs. 740, 749; *Hook* v. *White,* 36 Cal. 299; *Le Claire* v. *Thibault,* 41 Or. 601, 69 Pac. 552; *Rensberger* v. *Britton,* 31 Colo. 77, 71 Pac. 379; *Sugden* v. *Magnolia Hotel Co.,* 58 App. Div. 236, 68 N. Y. Supp. 809; *Glide* v. *Kayser,* 142 Cal. 419, 76 Pac. 50; *Meyer* v. *Quiggle,* 140 Cal. 495, 74 Pac. 40; *Isenburger* v. *Hotel Co.,* 177 Mass. 455, 59 N. E. 120.) The plaintiff's objections to the introduction of any evidence in support of the defendant's so-called counterclaim should have been sustained.

As to the question of the competency of J. O. Gregg to testify to the agreement resting in parol between himself and Kendall, by which Gregg sought to show that a part of the consideration for the notes and contract was the promise of Kendall made at and before the delivery of the notes to recon-

vey the Lakey eighty, we contend that the consideration stated
in the written contract is contractual in its nature and there-
fore cannot be altered or varied in any manner by parol testi-
mony any more than the provisions of the contract that the
conveyance of the real estate was to secure the payment of the
notes. (*Baum* v. *Lynn,* 72 Miss. 932, 18 South. 428, 30 L.
R. A. 441; *Reisterer* v. *Carpenter,* 124 Ind. 30, 24 N. E. 371;
*Looney* v. *Rankin,* 15 Or. 617, 16 Pac. 660; *Langan* v. *Lan-
gan,* 89 Cal. 186, 26 Pac. 764; *Freeman* v. *Freeman,* 68 Mich.
28, 35 N. W. 897; *Hubbard* v. *Marshall,* 50 Wis. 322, 6 N. W.
497; *Coon* v. *Knapp,* 8 N. Y. 402, 59 Am. Dec. 502; *Hendrick*
v. *Crowley,* 31 Cal. 471; *Warbasse* v. *Card,* 74 Iowa, 306, 37
N. W. 383; *Tennessee R. Co.* v. *East A. Ry.,* 73 Ala. 426; *Davis*
v. *Gann,* 63 Mo. App. 425; *Mattison* v. *Chicago etc. Ry.,* 42
Neb. 545, 60 N. W. 925.) "Equity aids the vigilant, and not
those who slumber on their rights." (*Neppach* v. *Jones,* 20
Or. 491, 23 Am. St. Rep. 147, 26 Pac. 569, 849.) Laches is
passiveness with knowledge. (*McCartin* v. *Traphagen,* 43 N.
J. Eq. 323, 11 Atl. 156; *Wilkson* v. *Sherman,* 45 N. J. Eq.
413, 18 Atl. 228; *Perkins* v. *Lain,* 82 Va. 59. See, also, *Bur-
ling* v. *Newlands* (Cal.), 39 Pac. 49; *Lenox* v. *Harrison,* 88
Mo. 491; *Green* v. *Dietrich,* 114 Ill. 636, 3 N. E. 800; *Chap-
man* v. *Bank of California,* 97 Cal. 155, 31 Pac. 896; *Bell* v.
*Hudson,* 73 Cal. 285, 2 Am. St. Rep. 791, 14 Pac. 791; *Ham-
mond* v. *Wallace,* 85 Cal. 522, 24 Pac. 837; *Burkle* v. *Levy,*
70 Cal. 250, 11 Pac. 643; *Neppach* v. *Jones,* 20 Or. 491, 23
Am. St. Rep. 145, 26 Pac. 569, 849; *Brown* v. *Massey,* 138
Mo. 519, 38 S. W. 939; *Ketcham* v. *Owens,* 55 N. J. Eq. 344,
36 Atl. 1095; *Harrigan* v. *Smith* (N. J. Ch.), 40 Atl. 13;
12 Am. & Eng. Ency. of Pl. & Pr., p. 828 et seq.; 2 Pomeroy's
Equity, secs. 817, 965; 1 Wood on Limitations, p. 141, notes
7, 8; p. 149, note 2; p. 151, notes 3, 4.)

*Messrs. Walsh & Newman,* for Respondents.

Counsel for appellant makes his argument solely upon the
proposition that the new matter was pleaded only as a counter-
claim. Matter may be pleaded as a defense or counterclaim,

and may be pleaded as both defense and counterclaim. In this action it was pleaded as a defense to the enforcement of the claims of the plaintiff. It showed a failure, or at least a partial failure, of consideration, and until the plaintiff fulfills all the terms of the contract of his grantor, it would be inequitable to permit him to enforce the claim against the defendant and retain the land that his grantor agreed to reconvey to the defendant. As a counterclaim, the case comes within the provisions of our Code. But if it did not come within the provisions of the Code, the court, as a court of equity, would allow the setoff. Courts of equity are not bound by the strict rules of law on the subject of setoff or counterclaim. They do not administer justice by halves, and when they have all the parties before them, will make a decree, settling the rights of all parties, and prevent further litigation and multiplicity of suits, and prevent one party from getting an advantage over the other. (*Hobbs* v. *Duff*, 23 Cal. 596.)

The right of setoff in chancery exists, independent of the statutes of setoff, and is not subject to them. (*Jeffries* v. *Evans*, 45 Ky. (6 B. Mon.) 119, 43 Am. Dec. 158; *Blake* v. *Langdon*, 19 Vt. 485, 47 Am. Dec. 701; *Spear* v. *Day*, 5 Wis. 193; *Naglee* v. *Palmer*, 7 Cal. 543.)

It is alleged in the answer that the promise of Kendall to execute the declaration of trust and agreement, was a part of the consideration for the notes, agreement and mortgage in issue in this case. It is contended parol evidence cannot be introduced because the contract is in writing. It is alleged that the contract is imperfect, and does not contain all the agreements, thus putting that matter in issue and admitting parol evidence. (Code of Civil Proc., sec. 3132, subds. 1, 2, sec. 3136.)

The parol evidence offered does not vary or contradict the written instrument. It only explains and shows a further consideration. Oral evidence may be introduced to show that the contract is incomplete and supplied the defect. (*Sivers* v. *Sivers*, 97 Cal. 518, 32 Pac. 571; *Gundry* v. *Green*, 95 Cal.

630, 30 Pac. 786.)   The oral agreement of December 18, 1893, independent of the agreement of April 22, 1889, is sufficient to establish the trust.   A trust may be established by parol. (*Bayles* v. *Baxter*, 22 Cal. 575; *Fulton* v. *Jensen*, 99 Cal. 590, 34 Cal. 331; *Hidden* v. *Jordan*, 21 Cal. 92; *Riley* v. *Martinelli*, 97 Cal. 580, 33 Am. St. Rep. 209, 32 Pac. 579; *Brison* v. *Brison*, 75 Cal. 525, 7 Am. St. Rep. 189, 17 Pac. 689; *Brison* v. *Brison*, 90 Cal. 223, 27 Pac. 186; *Snider* v. *Johnson*, 25 Or. 328, 35 Pac. 846.   See, also, *Michael* v. *Foil*, 100 N. C. 178, 6 Am. St. Rep. 577, 6 S. E. 264; *Manning* v. *Jones*, Busb. L. (44 N. C.) 368; *Trowbridge* v. *Wetherbee*, 11 Allen, 361; *Sherrill* v. *Hagan*, 92 N. C. 345; *Bedford* v. *Graves*, 8 Ky. Law Rep. 262, 1 S. W. 534; *Groff* v. *Hansel*, 33 Md. 163; *Applegarth* v. *Robertson*, 65 Md. 463, 4 Atl. 896; *Withers* v. *Greene*, 9 How. 230, 13 L. Ed. 116; *Whitney* v. *Allaire*, 4 Denio, 554; *Stufflebeem* v. *Arnold*, 57 Cal. 11.)   We plead as a defense want of consideration by failure of Kendall to perform his oral agreement.   This does not alter or in any way modify the contract which Gregg executed. When Kendall's contract to reconvey the Lakey land is performed, then the contract for the payment of the notes and enforcing the security against the land  conveyed by his deed of December 18, 1893, can be enforced without change or modification.

"Equity will not refuse relief because of the lapse of time, unless a period equal to the statute of limitations has expired." (*Chapman* v. *Lee*, 64 Ala. 483; *Supervisors of Henry Co.* v. *Winnebago etc. Drain Co.*, 52 Ill. 454; *Murphy* v. *Blair*, 12 Ind. 184.)

MR. JUSTICE MILBURN delivered the opinion of the court.

Appeal of the plaintiff from an order  overruling a motion from a new trial and from that part of the judgment which is in favor of the defendants.

Defendant Gregg, on the 18th day of December, 1893, made and delivered to one Kendall his four promissory notes for

$5,000 each, and to secure the same he and his wife made a deed to Kendall of certain lands and town lots, it being expressly understood, as per contemporaneous written statement, signed and acknowledged by Kendall and Gregg, that upon the payment of the notes the property should and would be reconveyed by Kendall to Gregg. Among other things, it is recited in the contemporaneous instrument: "Whereas, the said Lucius P. Kendall and said Joseph O. Gregg have this day accounted together concerning all dealings of every kind, character and description heretofore had between them, * * * and it has been ascertained and determined by said parties that the said Joseph O. Gregg is now indebted to said Lucius B. Kendall in the sum of $20,000, * * * and is at present unable to pay or discharge said indebtedness, but in order to secure the payment of said indebtedness and interest thereon, * * * has caused to be conveyed to said Lucius B. Kendall the following described lands: * * *" It was agreed, as stated in said instrument, on the part of Kendall, that he would reconvey as stipulated upon the payment of the indebtedness. Kendall had assigned and conveyed to the plaintiff herein all his interest in the notes, mortgages, lands, and all his rights under said contemporaneous agreement. This suit was brought on default of payment of the notes to foreclose the mortgage, for such the deed appeared and was intended to be.

Defendant Gregg answered, and admitted the above alleged facts, but in defense set up what he calls a "counterclaim"; that is to say, he, while admitting that he has not paid any of the money secured in the manner above stated, avers that plaintiff holds the record title to a certain piece of land called the "Lakey tract," not mentioned in the mortgage or in the contemporaneous instrument referred to, and that it was part of the consideration of his (Gregg's) executing the mortgage that he (Kendall) was thereafter to make in writing, sign and deliver to him an agreement or promise to convey to him the Lakey tract. In the contemporaneous agreement heretofore mentioned, there is stated a second consideration for making the mortgage, to-wit,

the withdrawal by Kendall of all objections on his part theretofore made by him to a certain decree of partition of certain lands. There is not any mention in the mortgage or in the said contemporaneous agreement of any promise or obligation of Kendall to convey to Gregg the Lakey land. "All dealings" are settled, but no mention is made of the Lakey land matter. Part of this Lakey tract had meantime been conveyed to Burlingame, one of the defendants herein, by Gregg. Burlingame intervened.

On the trial evidence was introduced by Gregg, over the objection of plaintiff, in support of his counterclaim. The position of Gregg is that his averments as to the Lakey land matter constitute a defense as going to show that the consideration of the mortgage failed, in part at least, for that Kendall never did sign and transmit to him the written agreement to convey the Lakey tract to him, and in fact refused to do so, and has failed to convey the same, and that the averments constitute also grounds of a counterclaim.

The court found and adjudged in favor of defendant Gregg as to the counterclaim, and ordered the conveyance of the Lakey tract to him, but seems originally to have failed to require reimbursement of plaintiff by the defendant of taxes and assessments made on the land and paid by the plaintiff and his predecessor.

It is alleged by Gregg that Kendall never intended to carry out the promise to convey the Lakey tract to him, and that the making of the promise to convey without then and there intending to perform was actual fraud. (Civil Code, subd. 4, sec. 2117.) Judgment went for the plaintiff on the mortgage, with adjudication as to the counterclaim, which we have mentioned above. Afterward the court, after hearing the motion of plaintiff for a new trial, conditionally granted the same, unless the defendants would consent to a modification to the effect that they should pay certain taxes and assessments. To this they assented, and, having performed, the motion for new trial was then denied. Neither of the defendants appeals.

The defendants not making an attack upon the judgment by appeal therefrom, we have only the appeal of the plaintiff before us. This appeal is resisted by the defendants; in other words, they wish the case to stand as it is—that is, they are willing that the mortgage shall be foreclosed according to its terms, but they demand that the Lakey land be conveyed to Gregg. It does not make any difference in this case whether the evidence as to the Lakey property goes to the want of consideration in part for the mortgage and mortgage notes, or whether it is a matter of counterclaim. It is not necessary for us to remark upon the position taken by counsel that the Lakey land matter is a matter of counterclaim. It undoubtedly, judging from the record, was the intention of Kendall and Gregg to get title to said Lakey land from the government without disclosing to the United States general land office that Gregg, and not Kendall, was the purchaser of certain scrip, and the claimant of the land taken thereunder. Scrip had been bought by Gregg with money borrowed from Kendall. The scrip was put upon the Lakey land. It turned out to be fraudulent in that the alleged soldier to whom it had been issued was not entitled to the same. Meanwhile the scrip had been put upon the land by the attorney in fact of Gregg, and the land conveyed to Kendall by the attorney in fact by order of Gregg, and with the consent of Kendall. It is alleged by Gregg that Kendall held the land as security for money owing by the former. Kendall, finding that the scrip was worthless, appears from the record in the land office, in evidence, to have proceeded under the Act of Congress of August 18, 1894 (U. S. Comp. Stats. 1901, p. 1417), making certain scrip "valid in the hands of *bona fide* purchasers for value," and saying that "all entries heretofore and hereafter made with such certificates by such purchasers, shall be approved, and patent shall issue in the name of the assignee." But it seems that the general land office, differing with the local land office, held the Act of March 3, 1893 (U. S. Comp. Stats. 1901, p. 1416), to apply, it declaring that, "where soldier's additional homestead entries have been made or initiated upon

certificate of the commissioner of the general land office of the right to make such entry, and there is no adverse claimant, and such certificate is found erroneous or invalid for any cause, the purchaser thereunder, on making proof of such purchase, may perfect his title by payment of the government price for the land.''

Kendall and Gregg labored under the mistaken idea that while Gregg, as he alleges, was the owner and purchaser of the scrip and the land taken up thereunder, Kendall could properly and lawfully make the necessary proofs that he was the purchaser of the scrip or of the land and procure patent. The record shows the fact that Gregg, and not Kendall, was the purchaser of the scrip and of the land upon which it was put, and that Kendall was acting not as the owner of the scrip or claimant of the land was by them intentionally kept carefully from the knowledge of the government. The patent went to Kendall.

Now, under these circumstances, Gregg contends that the mortgage judgment (from which he does not appeal) should not be enforced unless Kendall's assignee (the plaintiff) carries out what he (Gregg) declares was part of the agreement of December 18, 1893, to wit, the alleged promise to convey to him (Gregg) the Lakey eighty acres of land, which promise, if made, was deliberately left out of the written instrument of December 18, 1893. If, as we believe and hold, the contract between Kendall and Gregg to take the land from the government in the way agreed upon and above stated was invalid, then it does not make any difference whether Kendall intended at the time of the settlement of December 18, 1893, to make his promise to convey the Lakey tract or not. It was a promise which could not be enforced. A trust cannot result in one of two persons for the benefit of the other, if they intended and agreed to obtain land from the government unlawfully and fraudulently. In such a case, in a suit between themselves as to the land, the court will leave the parties where it finds them.

It is obvious from the admissions of the answer as to the making of the notes and mortgage, the averments as to the counterclaim, and the prayer of the answer, that the only question submitted by the defendant in the court below was: Shall the plaintiff be permitted to foreclose his mortgage without first conveying to Gregg the Lakey tract? This was the only issue tried. This issue was forced upon the plaintiff by the defendants, with the consent of the court, and it led the court erroneously to admit the testimony as to the Lakey tract over the objection of the plaintiff.

Defendants do not claim that the arrangement of Kendall and Gregg as to the Lakey tract was fraudulent, and do not say that the mortgage is void for any such reason. The appellant's position is that the Lakey tract matter had nothing to do with the mortgage, and he relies upon the writings of December 18, 1893. to support his assertion. In short, defendants say the mortgage is good and valid, and may be foreclosed, provided the plaintiff be ordered to convey to Gregg a certain tract of land which, as we hold, was gotten from the government contrary to law, and which defendants say plaintiff's assignor orally promised on December 18, 1903, to convey to Gregg.

We may not consider in this case, when there is no appeal from the judgment by the defendants, or any of them, whether or not the mortgage sued upon, if partly made in consideration of such or any promise of Kendall in relation to the Lakey tract, may be lawfully foreclosed.

It is not necessary for us to consider the point made by appellant that the contract *in writing* of December 18, 1893, covered *all dealings* between the parties. Whether it did or not, it is apparent, under the circumstances, that the defense or "counterclaim" of the alleged unfulfilled contemporaneous oral agreement of Kendall as to the Lakey tract may not, on this appeal, be considered by us as entering into or forming part of the consideration of the notes and mortgage.

The above being our view of the case on this appeal, after considering the oral arguments and reading the able brief of

each of counsel, we need not discuss or pass upon the other points of appellant in regard to laches, the statute of limitations, etc. As we have said, the court erred in admitting evidence relating to the supposed "counterclaim" or defense as to the Lakey matter. · Objection was raised below on the trial, and the point of its admissibility either as a defense or as a counterclaim is squarely raised by the briefs submitted to us.

For the reasons above appearing, the court below is directed to modify its judgment by striking therefrom all reference to the north half of the southeast quarter of section 31, township 21 north, of range 4 east (the Lakey eighty acres). The appeal, therefore, of plaintiff from that part of the judgment referring to the Lakey land is sustained, the court having erred in making its conditional order overruling plaintiff's motion for a new trial, whereas it should have granted it, and subsequently, upon the performance of the condition, having denied the motion; but the judgment now being modified herein and hereby as above stated, there is not any reason why a new trial should be had, and therefore the court below is ordered to modify the judgment as above stated, and to let the same stand as the judgment of the court without a new trial.

*Judgment modified.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing granted October 21, 1905.

### ON REHEARING.

(Submitted December 4, 1905. Decided January 29, 1906.)

Mr. JUSTICE MILBURN delivered the opinion of the court.

This case is before the court on rehearing, having been heretofore decided. For statement of facts and opinion see *ante,* p. 216, 82 Pac. 27. Our decision before was that the decree below should be modified by striking from it all refer-

ence to the Lakey eighty acres, which will be hereinafter called the Lakey land. After consideration of argument of counsel on rehearing, we now say that we erred in ordering the particular modification of the decree which we in the former opinion directed to be made.

The contemporaneous instrument of December 18, 1893, shows that the mortgage for $20,000 was given to secure certain indebtedness, evidenced by four promissory notes of $5,-000 each, after an accounting as to all dealings between Kendall and Gregg. There is not any statement therein that there was made, or intended to be made, any release of the Lakey land held by Kendall as security for a certain sum of $3,000, being on such accounting considered as part of the $20,000, theretofore advanced by him to Gregg, or that the debt of $3,000, or any part thereof, had been discharged in any way. The fact of this land being held as such security being set up by defendant Gregg in the equity suit to foreclose the $20,-000 lien on other property, we are now of the opinion that the court below was correct in attempting to adjust all the equities growing out of the whole transaction and in requiring Keely, the successor of Kendall, to convey the Lakey land to Gregg, but was not correct in directing Gregg to pay only the taxes and assessments on said land accrued, with interest, but should have added a further condition to be performed by Gregg, to-wit, to pay the $3,000 and interest, or so much thereof as might remain unpaid after foreclosure and settlement of the $20,000 mortgage.

Counsel for plaintiff and appellant admitted in open court on rehearing that he would not complain of such amendment of the decree.

It appears that the Lakey land was taken as security for the $3,000. As the $3,000 and interest item was included in the settlement of December 18, 1893, interest should be computed on $3,000 from the date that the debt was incurred, to-wit, April 22, 1889, until December 18, 1893, at the then statutory rate, and at eight per cent upon the total of such $3,000 and

interest from December 18, 1893, until the time of settlement
or foreclosure of the $20,000 mortgage. If upon such settle-
ment of the foreclosure suit under the decree there be a defi-
ciency or a balance still unpaid, thus leaving the $3,000 and
interest computed as aforesaid, or any part thereof, unpaid,
then such sum of $3,000 and such interest, or so much thereof
as is unpaid by such foreclosure, shall, with the amount now
reported by counsel to be deposited with the clerk for taxes and
assessments on the Lakey land, be paid to Keely, and then the
said Lakey land shall be by Keely, or the clerk of the court
as commissioner, conveyed to Gregg.

Upon further reflection and after further examination we
find that we were in error in this case, in our conclusion that
because Kendall and Gregg apparently had intended to conceal
from the federal land office the fact that Gregg, and not Ken-
dall, was the purchaser under the scrip, any promise of Kendall
to convey the land patented to him in pursuance of such secret
plan, could not be enforced. It seems that the facts upon
which we based our conclusion that the arrangement to procure
title in Kendall, and not in Gregg, were all known and con-
sidered by the interior department before issuance of patent,
and that the goverament knowingly and willingly conveyed
the land to Kendall intentionally, leaving him and Gregg to
settle the equities between themselves, if any there were, in
the courts after patent issued. For this reason we revoke what
was said in the former opinion as to the arrangement between
the parties being void, and that the courts would not enforce
the intended trust. It now appears that Kendall took the pat-
ent in his own name to secure the sum of $3,000 and interest,
and his successor should convey the same to Gregg whenever
the amount for which it was held as security, such amount
to be ascertained as hereinbefore said together with said taxes
and assessments, is fully paid by or on behalf of Gregg.

Let the decree below appealed from be modified accordingly,
and let the foreclosure of the $20,000 mortgage proceed as
decreed. Everything in the former opinion not in conformity

herewith is revoked.   The decree, when amended as above de-
cided, shall stand affirmed.   *Remittitur* forthwith.

*Modified and affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway con-
cur.