EDWARD I. PERKINS, trustee in bankruptcy, *vs.* WILLIAM P. HILTON & others.

Suffolk.    May 6, 1952. — September 12, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Trust,* Validity, Parol trust.  *Veteran.  Public Policy.  Fraudulent Conveyance.  Volunteer.  Payment.*

A conveyance of real estate made by an insolvent grantor without consideration, although in recognition by the grantor of an oral trust of the property for the grantee, was fraudulent where such trust was contrary to public policy and never valid.

The benefits of the provisions of the Federal servicemen's readjustment act respecting "G. I. loans" are intended for veterans only. [295]

An oral arrangement between a veteran and his mother, that real estate to be purchased as a home for her, her husband and the veteran should be her property and at some time should be conveyed to her but that the veteran initially should take title for the sole purpose of securing the "G. I. loan" benefits of the Federal servicemen's readjustment act, to which he was entitled but she, as she knew, was not, was a fraud upon the act and contrary to public policy, so that the oral trust for the mother arising from such arrangement was never valid.

In a suit by a trustee in bankruptcy seeking real estate fraudulently conveyed to the defendant by the bankrupt, the defendant in the circum-

stances was entitled to be allowed for payments made by her subsequent to the conveyance for taxes, mortgage principal and interest, and repairs in order to preserve the property, and was chargeable with rent received by her from the property after the conveyance; she was not entitled to an allowance for payments of such nature made by her before the conveyance when she had no interest in the property and was a mere volunteer. [295–296]

BILL IN EQUITY, filed in the Superior Court on April 11, 1950.

The suit was heard by *Goldberg,* J.

*Frank G. Lichtenstein & Edward I. Perkins,* for the plaintiff, submitted a brief.

No argument nor brief for the defendants.

QUA, C.J. This suit in equity is brought by the trustee in bankruptcy of the defendant William P. Hilton against him and his mother, Esther L. Hilton, and his father, Philip R. Hilton, to secure a conveyance by Esther L. Hilton to the trustee of a residence on Bellevue Avenue in Winthrop which it is alleged the bankrupt had previously conveyed to his mother in fraud of his creditors. Apparently the father is joined only because of possible rights of curtesy. The trial judge entered a decree dismissing the bill. The plaintiff appeals. The evidence is reported.

The facts come mainly from the testimony of the two principal defendants and are not seriously in dispute. William P. Hilton, the bankrupt, was a young veteran who after his discharge from the armed service became entitled to the benefit of the G. I. bill of rights, so called. Before entering the service he had always lived with his mother and father, and he returned to live with them after his discharge. In June, 1947, the family were about to be evicted from the house which they occupied, and it became necessary to find another place to live. The Bellevue Avenue house came to their attention. But this house was in a run down condition, and repairs were necessary, and William was without means to make them. His employment was irregular. It was understood between him and his mother that he should take title, but that the property should be hers, and that some day he would convey it to her. This

arrangement was made in order to secure the benefits of a "G. I. loan" in a lower interest rate, a longer term, and other advantages. The son was entitled to these benefits, but the mother would not have been if she had taken title in her own name. She knew this. To secure these benefits was the sole reason why the mother took title in the son's name. It was also expected and understood that he should live in the home with the family as he had always done, except while in the service. This arrangement was carried out. The house was bought for $9,600, and under date of August 6, 1947, title was taken in William's name. A coöperative bank granted him a "G. I. loan" for the full purchase price of $9,600. The mortgage, signed by William, is dated August 7, 1947. The mother paid for the "G. I. appraisal" and all other expenses in connection with the loan. She also expended substantial sums for repairs and improvements and has paid the mortgage interest and taxes and made payments in reduction of the mortgage. William has paid practically nothing. He has lived in the house with his parents and was still living there at the time of the hearing. Under date of May 23, 1949, while insolvent, he conveyed the property to his mother in accordance with the previous understanding and without the payment of any consideration by her. On March 13, 1950, he was adjudicated bankrupt.

Notwithstanding the wording of G. L. (Ter. Ed.) c. 203, § 1, it is settled that an oral express trust in land is not a mere nullity, although it is unenforceable because of the lack of a writing. *Simpson* v. *Henry N. Clark Co.* 316 Mass. 118, 121, and cases cited. There is nothing to the contrary in *Saulnier* v. *Saulnier*, 328 Mass. 238, 239. In that case the trustee refused to carry out the oral understanding and refused to convey the land. In the case before us the trustee, William, has recognized the oral understanding by conveying the land in accordance with it. Ordinarily a conveyance in accordance with an oral trust is not fraudulent as to creditors of the trustee. *Bailey* v. *Wood*, 211 Mass. 37. *Liberty Trust Co.* v. *Hayes*, 244 Mass. 251. *Hutchins* v.

*Mead,* 220 Mass. 348. *Ferguson* v. *Winchester Trust Co.* 267 Mass. 397.

But in this case the plaintiff contends that the oral trust was never valid for the reason that it was a part of an attempt to obtain for the mother of the veteran the special benefits of the servicemen's readjustment act, to which only veterans themselves are entitled, and that it was in effect a fraud upon the act and contrary to public policy. The pertinent provisions of the act are found in U. S. C. (1946 ed.) Sup. V, Title 38, § 694a, which in so far as here material reads as follows: "Loans for homes; amount of guarantee. (a) Any loan made to a veteran under this subchapter, the proceeds of which are to be used for purchasing residential property or constructing a dwelling to be occupied as his home or for the purpose of making repairs, alterations, or improvements in property owned by him and occupied as his home, is automatically guaranteed if made pursuant to the provisions of this subchapter, including the following: (1) That the proceeds of such loan will be used for payment of the property purchased or constructed or improved; (2) That the contemplated terms of payment required in any mortgage to be given in part payment of the purchase price or the construction cost bear a proper relation to the veteran's present and anticipated income and expenses; and that the nature and condition of the property is such as to be suitable for dwelling purposes; and (3) That the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator." It will be noted that there is no express requirement that where property is to be purchased the veteran must become the owner, but there is such express requirement where the loan is to be used for repairs, alterations, or improvements. We think the contrast here is between property to be owned and property already owned, and that it was not the intent to guarantee loans on property owned by some person other than the veteran in the first instance

but not in the second. It would be a strange construction of the act that would allow a nonveteran to secure its benefits by using a veteran as a mere "straw," even if the veteran were allowed to live in the house, and in that sense to occupy it as "his home." The intent to benefit and protect only veterans is plain throughout the act. It was largely at least for this reason that the provisions were inserted that the price or construction cost should bear a proper relation to the veteran's means of payment, and that the price should not exceed the reasonable value.

It is true that, at least as far as we are aware, there would have been nothing to prevent William from making the same arrangement with his mother after he had once obtained a loan on a bona fide title in himself; but we think that the act requires a genuine title in the veteran in the beginning, so that he will be in a position to secure for himself the benefit of any subsequent conveyances or trusts which he may see fit to make. We cannot escape the conclusion that the trust for the mother's benefit was illegal and invalid. This consequence has been held to follow in cases where "straws" have been used to take title to circumvent the homestead law. *Brown* v. *Peterson*, 27 Ariz. 418, 422. *Alsworth* v. *Cordtz*, 31 Miss. 32, 35. *Higgins* v. *Higgins*, 55 Mo. 346. *Keely* v. *Gregg*, 33 Mont. 216, 225. *Jackson* v. *Miller*, 6 Wend. 228. Restatement: Trusts, § 444, comment d. There are also one or two instances where contracts in contravention of other provisions of the servicemen's readjustment act have been held unenforceable as against public policy. *Young* v. *Hampton*, 36 Cal. (2d) 799. *Diamond* v. *Willett*, 37 So. (2d) 338 (La. App. 1948). Compare *Ewing* v. *Ford*, 31 Wash. (2d) 126. And see generally *Caines* v. *Sawyer*, 248 Mass. 368, 374; *Council* v. *Cohen*, 303 Mass. 348; *Tocci* v. *Lembo*, 325 Mass. 707, 710; Restatement: Trusts, §§ 60–64, 422.

We are of opinion, however, that the defendant Esther L. Hilton, even though she knew her son was insolvent when he conveyed the property to her on May 23, 1949, has in equity a right to be allowed for payments made by her since

that date with her own money, or money given her by her husband, for the purpose of preserving the property, such as payments for taxes, payments on the mortgage and interest, and payments for any repairs necessary for preservation. *Lamb* v. *McIntire*, 183 Mass. 367, 370. *Loos* v. *Wilkinson*, 113 N. Y. 485, 498–500. *Frank* v. *Von Bayer*, 236 N. Y. 473. Glenn, Fraudulent Conveyances & Preferences (Rev. ed.) §§ 252–256. This case is distinguishable from *Perkins* v. *Becker's Conservatories, Inc.* 318 Mass. 407, 412, and cases there cited, where the payments for which allowance was sought were not made for the preservation of recoverable assets. But we think no credit can be allowed for payments made before the conveyance to Mrs. Hilton, since before that conveyance she had no interest in the property, legal or equitable, except under color of an oral trust which we feel compelled to hold illegal and invalid. She was then a mere volunteer as to her son's property. She is chargeable with rents received by her from a room in the house after the date of the conveyance. The decree should provide for the payment of any balance due to Mrs. Hilton as a condition of relief to the plaintiff or should provide in some appropriate manner for securing such payment out of the property. The present record discloses that Mrs. Hilton made payments and received rent which should be considered in framing the final decree, but the evidence does not go far enough to supply all of the necessary figures.

It follows that the decree must be reversed and a further hearing must be had to determine the amount for which Mrs. Hilton is entitled to be allowed, or for which she is chargeable, after which a decree is to be entered for the plaintiff in accordance with this opinion.

*So ordered.*