Wilbur Towner, Respondent, v. Richard A. Berg, Appellant.

Third Department, March 27, 1958.

*Norman J. French* for appellant.

*Ralph S. Cramer* for respondent.

GIBSON, J.  Plaintiff has had judgment that defendant holds title to certain real property upon a constructive trust for the benefit of plaintiff.  Accordingly, the judgment directs that, upon plaintiff's procuring satisfaction of a mortgage upon which defendant is liable, defendant convey to plaintiff legal title to the premises.  Defendant appeals, asserting that the evidence was insufficient to invoke the remedy of constructive trust but that, in any event, plaintiff cannot establish the elements which would entitle him, prima facie, to that remedy, except upon proof of an agreement made in contravention of

the intent of the Servicemen's Readjustment Act of 1944 (U. S. Code, tit. 38, former § 693 *et seq.*) and hence void as against public policy.

Upon returning from military service, defendant lived with plaintiff and plaintiff's wife, who was defendant's mother, in an apartment which they were shortly required to vacate. Plaintiff and his wife looked for another place to live and inspected the premises which are now the subject of this action. There followed " some discussion in the family " as to purchasing the property. The record is markedly barren of detail as to this and subsequent discussions, but plaintiff testified that none of the family had cash for the purchase price or for any substantial portion of it and that the purchase was made by defendant for $8,200 and financed by his execution of a " G. I." mortgage to a savings and loan association for the full amount of the purchase price. Defendant thereafter lived with his mother and stepfather upon the premises, as did his two sisters. About one year later he left and, so far as appears, did not again occupy the premises. After the death of his mother in 1951, one of his sisters and her husband lived with plaintiff for some time, contributing to the household expenses.

Plaintiff recalled no " particular conversation " with defendant at the time of the purchase and had no discussion with defendant after the latter's removal, until the time, apparently some years later, when he learned that defendant planned to sell the property.

Plaintiff paid the costs of the title closing when the purchase was made. Thereafter he made all the payments of principal and interest which became due on the mortgage, reducing the principal amount to $5,430, and paid all taxes and insurance premiums. There was oral and documentary evidence of his payment of the costs of various improvements as well as of the expenses of repairs and upkeep. Plaintiff testified that defendant paid nothing. The defendant neither testified nor offered any evidence.

The trial court's decision noted the facts of the family relationship and the expenditures by plaintiff as well as the absence of any by defendant. It was also found that plaintiff had exercised complete control and supervision over the property and treated it as his own, while the defendant had not attempted to assert any rights of ownership. Some significance was attached to the fact that when the deed was returned to defendant from the recording office, he immediately handed it to plaintiff. The court said: " The inescapable inference from this

[the deed] incident and from all the facts is that it was the intention of the parties that the deed was to be taken in defendant's name merely as a means of financing the purchase, with the title actually being in the plaintiff.''

We consider that the record supports this finding and might, indeed, support the implication of a promise by defendant to effectuate the intention so found (see *Muller* v. *Sobol,* 277 App. Div. 884, motion for leave to appeal denied 301 N. Y. 815) by conveying the property to plaintiff. The decision does not seem to proceed on the theory of such a promise, however. In fact, plaintiff did not, and does not now contend that a promise was made and the complaint alleged none, relying on allegations of the family relationship and of unjust enrichment. Under these circumstances, and in view of the positions of the parties when defendant moved to dismiss at the close of the evidence, we would not be warranted in deeming the complaint amended to conform to the proof. (See Civ. Prac. Act, § 109 and *Pattison* v. *Pattison,* 301 N. Y. 65, 68.)

We think that, under the circumstances disclosed by this record, the existence of an express or implied promise to reconvey to plaintiff was essential to any recovery. Unjust enrichment, although a vital element, was not enough. The American Law Institute has expressed the broad doctrine thus: '' Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.'' (Restatement, Restitution, § 160, p. 640.) Obviously, all enrichment is not unjust. The test is whether '' the retention of the benefit would be unjust '' (op. cit. § 1, p. 12, comment '' a '') and that, clearly, not as an abstraction but under some legal principle. '' The element of unjust enrichment is therefore the *consequence* [emphasis supplied] of another element, the wrongful acquisition or retention of property which the claimant should have.'' (Newman on Trusts [2d ed.], p. 203.) As another authority observes: '' The criterion of ' unjust enrichment ' sounds useful until one has to decide whether a particular ' enrichment ' deserves to be labelled ' unjust.' '' (4 Powell on Real Property, § 594, pp. 568–569.)

In this case, enrichment would become unjust, and thus important, only if defendant's retention of the property would be wrongful. Assuming a relation of confidence, emphasized originally, perhaps, by the presence of the wife and mother, that alone was not enough to condemn the retention. This was

not the kind of a fiduciary relationship which has been held to render inherently fraudulent the retention of secret profits and acts of self-dealing generally (see *Equity Corp.* v. *Groves,* 294 N. Y. 8; *Meinhard* v. *Salmon,* 249 N. Y. 458; *Beatty* v. *Guggenheim Exploration Co.,* 225 N. Y. 380), so that restitution will be decreed as a matter of course upon proof of the relationship, of enrichment and of nothing more. In such cases the acquisition itself is in violation of a fiduciary duty. (3 Scott on Trusts, p. 2317, § 462.2.) We have found no case in which restitution was decreed upon a factual situation comparable to this, without proof of the additional element of a promise to reconvey or at least (as in *Pagano, infra*) an "understanding" or (as in *Sinclair, infra*) a declaration and recognition of a trust. (See, e.g., *Foreman* v. *Foreman,* 251 N. Y. 237; *Sinclair* v. *Purdy,* 235 N. Y. 245, 252; *Leary* v. *Corvin,* 181 N. Y. 222; *Goldsmith* v. *Goldsmith,* 145 N. Y. 313; *Wood* v. *Rabe,* 96 N. Y. 414; *Pagano* v. *Pagano,* 207 Misc. 474, affd. 2 A D 2d 756, motion for leave to appeal denied 2 N Y 2d 708; *Powell* v. *Powell,* 205 Misc. 14; and, see *Pattison* v. *Pattison,* 301 N. Y. 65, *supra.*) There is, indeed, authority that a mutual understanding is essential. (*Alonzo* v. *Alonzo,* 10 Misc 2d 261, affd. 270 App. Div. 977, motion for leave to appeal denied 296 N. Y. 1055.) The necessity of such a promise or understanding is further emphasized in this case where plaintiff seeks to acquire a legal title which he never possessed, and not, as in the usual case, merely to regain a title with which he parted, induced by, or in reliance upon, a relation of confidence. The distinction was noted in *Sinclair* v. *Purdy* (235 N. Y. 245, 253, *supra*) in which Cardozo, J., wrote for the court: "Distinctions are, indeed, to be drawn between cases where property is parted with on the faith of an oral promise, and cases where one without an interest in property before obtains a promise that an interest will be given to him thereafter (*Leary* v. *Corvin,* 181 N. Y. 222, 229; *cf. Amherst College* v. *Ritch,* 151 N. Y. 282). It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion."

Having concluded that the existence of an express or implied promise to reconvey is essential to recovery upon the theory of constructive trust, we reach the question whether respondent may succeed on a new trial as against the assertion of an agreement said to be void as against public policy.

Appellant urges, on this appeal for the first time, that relief may not be granted because the enforcement of whatever rights

the respondent might otherwise have would contravene public policy by giving effect to an agreement or transaction whereby the special benefits conferred exclusively upon veterans by the Servicemen's Readjustment Act of 1944 (U. S. Code, tit. 38, § 694 *et seq.*) would be utilized for respondent's benefit. As has been noted, the trial court found the transaction to be " a means of financing the purchase, with the title actually being in the plaintiff." The remedy of constructive trust has been denied in New York and in Massachusetts when the purpose of taking title in a veteran's name, upon his oral promise to reconvey, was to obtain a guaranteed loan under the act for one not entitled to its benefits (*Dunn* v. *Dunn*, 1 A D 2d 888; *Perkins* v. *Hilton,* 329 Mass. 291) and specific performance of a somewhat similar agreement has been denied in Georgia (*Glosser* v. *Powers,* 209 Ga. 149). We approve the principle enunciated in those decisions and its application to actions to impress constructive trusts. Any other rule would subvert the purpose of the act. As was said in the *Perkins* case (*supra,* p. 295) : " The intent to benefit and protect only veterans is plain throughout the act. It was largely at least for this reason that the provisions were inserted that the price or construction cost should bear a proper relation to the veteran's means of payment, and that the price should not exceed the reasonable value." And, again : " we think that the act requires a genuine title in the veteran in the beginning, so that he will be in a position to secure for himself the benefit of any subsequent conveyances or trusts which he may see fit to make." This latter conclusion seems buttressed by the provisions of the act limiting the guarantee to a relatively low amount which, once reached, exhausts the veteran's benefits, then and in future. (U. S. Code, tit. 38, § 694a.)

We do not consider, however, that, under the circumstances of this case, respondent must be deprived of all remedy. If, upon a new trial, facts are found which would ordinarily, and in the absence of a question of public policy, entitle respondent to the remedy of a constructive trust, that same proof would support the alternative remedy of an equitable lien. (Restatement, Restitution, § 161, comment " a ".) We believe that this latter remedy may be afforded on proper pleading and proof even though the evidence shall disclose the existence of a purpose and intent to misuse the privileges conferred upon appellant by the Servicemen's Readjustment Act. The question becomes one of balance, when the equities involved in a partic-

ular case are weighed against the ingredients of the particular violation of public policy. (See Restatement, Trusts, § 444; 3 Scott on Trusts, § 444, p. 2264.)

The violation here seems to us less grave in nature and consequence than those against the provisions of the Alcoholic Beverage Control Law, enacted "for the protection, health, welfare and safety of the people of the state", which required denial of relief in *Flegenheimer* v. *Brogan* (284 N. Y. 268) and *O'Connor* v. *O'Connor* (263 App. Div. 820, affd. 288 N. Y. 579), neither of which cases, in any event, involved a question of restitution merely partial. Here the conduct of respondent, so far as appears from the record thus far developed, seems not so "strongly reprehensible" (3 Scott on Trusts, § 444, p. 2266) as to foreclose all remedy. Partial relief has been granted to transferees in cases involving fraud of creditors to the extent that expenditures by the transferee have preserved the transferred property for the creditors. (*Frank* v. *Von Bayer*, 236 N. Y. 473; *Loos* v. *Wilkinson*, 113 N. Y. 485; and, see, 1 Glenn on Fraudulent Conveyances [rev. ed.], § 249 *et seq.*) We believe that upon a proper record, good conscience may require the same result here. In *Perkins* v. *Hilton* (329 Mass. 291, *supra*), restitution was awarded but was limited to expenditures made after the date title was conveyed to the veteran's mother in pursuance of the original agreement. That factual situation does not exist here but we are unable, in any event, to give recognition to the distinction there drawn. Equitable relief, once found warranted, is not required to be administered according to any rigid formula.

Upon the record now before us, appellant seems to have abandoned the property for many years, leaving to respondent the responsibility for its upkeep and the payment of the indebtedness for which appellant was liable, and tacitly confirming what seems to have been respondent's understanding of the arrangement. Appellant participated in at least equal measure with respondent in the wrongful acts whereby the loan was negotiated. No active fraud was involved nor did any monetary loss to the lending agency or to the Government ensue. The intent of the act was effected to the extent that the premises became appellant's home until, apparently, he chose to leave. (U. S. Code, tit. 38, § 694a; Code of Fed. Reg., tit. 38, § 36.4350.) The impressment of an equitable lien would give appellant the benefit of the future use and occupation as well as of the substantial appreciation in value to which respondent's witness testified. We do not consider that he should receive an even

greater reward for his own wrongful act by having the advantage of respondent's expenditures of a capital nature. As regards those made in reduction of the mortgage indebtedness, their allowance to respondent would do no more than, in effect, restore the encumbrance to its original status and amount. As to this appellant can, in our view, have no just complaint.

Should it be found, upon a new trial, that an equitable lien should be impressed, the amount should be limited to the amount paid by plaintiff in reduction of the principal of the mortgage indebtedness and the amount whereby the moneys expended by him for permanent improvements enhanced the value of the premises. Under the circumstances, and comparably to the case of a cotenant in exclusive possession (*Clute* v. *Clute,* 197 N. Y. 439; 2 Walsh on Commentaries on Law of Real Property, § 129, p. 59), plaintiff should not be charged with the value of his use and occupation nor credited with the amounts paid for taxes, insurance and ordinary maintenance and repairs, if the value of his use and occupation equals or exceeds his payments for those purposes.

The judgment should be reversed, on the law, and a new trial ordered, with costs to appellant to abide the event.

Foster, P. J., Bergan and Coon, JJ., concur.

Judgment reversed, on the law, and a new trial ordered, with costs to appellant to abide the event. The court affirms the facts.