POLEBITZKE and another, Respondents, vs. JOHN WEEK LUM-
BER COMPANY, Appellant.

*April 13—May 23, 1916.*

*Contracts: Construction: Conveyances: Waters: High-water mark.*

1. Where an instrument is capable of different constructions, each
   of which does no violence to the language used, recourse may be
   had to the facts and circumstances surrounding the parties at
   the time of the execution thereof, for the purpose of determining
   its true construction, and the intention of the parties, if at all
   consonant with the language used, must govern its construction.
   The court, if possible, must give force and effect to every part
   of the instrument, reading nothing into it and nothing out of it.
2. Under the foregoing rule a conveyance, made in 1878 to a corpora-
   tion engaged in logging, of land in lots 1 and 2 in a certain
   section, described as follows: "One rod wide along the mean-
   dered shore bordering on the Wisconsin river, including lake
   and bayous leading into the Wisconsin river, for the purpose of
   rafting and boomage," is construed to cover one rod in width
   from the ordinary high-water mark, rather than from the nor-
   mal or usual stage of the river,—it appearing that there were
   no bayous on lots 1 and 2 in a normal stage of the water, and the
   construction adopted being in harmony with the purpose for
   which the land was bought, with the purchase price, with the
   language used, and with the practical construction given the
   conveyance by the parties.
3. By ordinary high-water mark is meant the point on the bank or
   shore up to which the presence and action of the water is so con-
   tinuous as to leave a distinct mark by erosion, destruction of
   terrestrial vegetation, or other easily recognized characteristics.

APPEAL from a judgment of the circuit court for Portage
county: GEO. W. BURNELL, Judge. *Reversed.*

Action to recover damages for trespass upon lots 1, 2, and
3 of section 15, township 24 north, of range 7 east. The jury
awarded damages, $208, to about twenty-two acres, all of
which, except one acre in lot 3, were in lots 1 and 2. In 1878
defendant's predecessors in title obtained a deed from George

Kickland, the then owner of lots 1 and 2, conveying land therein described as follows:

"One rod wide along the meandered shore bordering on the Wisconsin river, including lake and bayous leading into the Wisconsin river, for the purpose of rafting and boomage, with all the necessary rights and privileges thereunto pertaining; being on lots one (1) and two (2), section fifteen (15), township twenty-four (24), range seven (7) east."

This deed was recorded and the grantee therein and subsequent grantees from 1878 to 1905 took logs out in the summer that had floated into the bayous on lots 1 and 2 during the driving stage of the river. If there were freshets sufficient to enable them to roll the logs in the bayous and pole them out into the river they would do so; if not, they would use teams in getting them to the river. In April, 1906, plaintiffs purchased lots 1 and 2, and they claim they owned the land upon which the logs lay in 1906 to 1910 inclusive, and that they have been damaged by reason of the removal of the logs in those years by means of teams; that the lying of the logs on the land and the work of their removal rendered the land unfit for pasture or the cutting of hay. The defendant claims the logs lay and were removed on its own land and that it committed no trespass on lots 1 and 2. The case was here on a former appeal (157 Wis. 377, 147 N. W. 703), in which the nature of defendant's title to the lands conveyed was determined, and reference may be had to it for a fuller statement of facts.

The trial court instructed the jury that the land conveyed included "one rod outside the meandered shore on the Wisconsin river, and also one rod from the edge of any bayous or lakes described in said deed *at a normal stage* of the water in said river." Both parties agree that the phrase "meandered shore bordering on the Wisconsin river" means the natural shore of the river, but the defendant claims that the one rod in width on the bayous and on the river includes one rod be-

yond the ordinary driving stage of the river, and not one rod beyond the normal or usual stage of the river, and it appeals from the judgment entered upon the verdict.

For the appellant there was a brief by *Fisher & Cashin,* and oral argument by *William E. Fisher.*

*A. L. Smongeski,* for the respondents.

VINJE, J. Where an instrument is capable of different constructions, each of which does no violence to the language used, recourse may be had to the facts and circumstances surrounding the parties at the time of the execution thereof, for the purpose of determining its true construction, and the intention of the parties, if at all consonant with the language used, must govern its construction. The court, if possible, must give force and effect to every part of the instrument, reading nothing into it and nothing out of it. *Polebitzke v. John Week L. Co.* 157 Wis. 377, 147 N. W. 703, and cases cited.

It appears from the evidence that the lands in dispute constitute a low strip lying between a highway and the river, opposite and below a sharp bend therein, causing logs to float in upon the land during a driving stage of water, which is usually four or five feet higher than a normal stage; that there are no bayous on lots 1 and 2 during a normal stage of water, but during a driving stage of the river the water floods the greater portion of the strip and bayous are formed therein. Touching the upper end of the strip is a body of water that may be called a lake, and was no doubt the lake referred to in the deed. Since Kickland conveyed to the Menasha Wooden Ware Company in 1878, it and its subsequent grantees have entered upon the land during the summer and removed its logs by means of the bayous if the water was sufficiently high for so doing; if not, by means of teams, as was done in the years 1906 to 1910 inclusive. Mr. Kickland lived during all this time near and in sight of the land and

made no objection to such removal or claimed any damages therefor, tending to show that the original parties considered that the land in question passed under the deed. The area of land in dispute amounts to about twenty-one acres. If, as plaintiffs claim, only one rod from the normal stage of water was conveyed, then only a strip along the river one rod in width and containing from one to one and a quarter acres passed—a strip which the evidence shows has been of no particular value to defendant or its predecessors in title. The consideration expressed in the deed of 1878 was $100. It is not at all probable that experienced lumbermen would pay that amount of money for less than an acre and a half of land of no particular value to them. On the other hand, the land they wanted the use of was the low-lying land upon which logs floated and lodged during the driving stage of water. In 1878 $100 for twenty-odd acres of the character of this land was a good price.

The court can take judicial notice of the fact that the Wisconsin river is a navigable stream. The defendant therefore had the right to use it for logging purposes up to the ordinary high-water mark. *Diana Shooting Club v. Husting,* 156 Wis. 261, 145 N. W. 816. They were under no necessity to purchase anything lying below such mark for logging purposes. What they required was land lying above ordinary high-water mark, and their conveyance must be held to begin at such mark and to extend one rod further. By ordinary high-water mark is meant the point on the bank or shore up to which the presence and action of the water is so continuous as to leave a distinct mark by erosion, destruction of terrestrial vegetation, or other easily recognized characteristics. *Lawrence v. American W. P. Co.* 144 Wis. 556, 562, 128 N. W. 440. In view of these facts, and especially in view of the purpose of the grant and the practical construction given the conveyance for over twenty-seven years by the parties thereto, we reach the conclusion that one rod in width from

ordinary high-water mark was meant. Such construction harmonizes with the purpose for which the land was bought, with the purchase price, with the language used, and with the practical construction given the conveyance by the parties. If it meant from a normal stage of water, the provision that it should include bayous leading into the Wisconsin river would become meaningless, since there are no bayous on lots 1 and 2 in a normal stage of water.

In view of the erroneous instruction of the court as to where the one-rod strip began, and in view of the fact that the record does not disclose how far one rod from ordinary high-water mark along the bayous would carry defendant's boundary, the judgment must be reversed and the case sent back for a new trial.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.