SANBORN and wife, Respondents, vs. MISKI and others, Appellants.

*May 12—June 21, 1926.*

*Deeds: Description of property conveyed: Intention of parties: Reformation: Waiver: Evidence: Sufficiency.*

1. In ascertaining the boundaries of land conveyed the test is the real intention of the parties, to be gathered from the entire writing, and, when necessary, by resort to the circumstances surrounding the transaction. p. 516.
2. The evidence in this case is *held* to show that lands conveyed and provisionally described were intended to be the north *five acres of a government lot and to warrant reformation* of the deed accordingly. p. 518.
3. In an action to reform a deed the grantees of the land and their successors in title are *held*, under the evidence, not to have waived their right to claim all of the land intended to be conveyed, though improperly described. p. 518.
4. Waiver is the intentional relinquishment of a known right. p. 518.

APPEAL from a judgment of the circuit court for Vilas county: A. H. REID, Circuit Judge. *Affirmed.*

This is an action in equity to reform a deed and quiet title in the plaintiffs to a certain parcel of land in Vilas county. The court made its findings of fact and conclusions of law and entered judgment therein as prayed for in the complaint.

For the appellants there was a brief by *Churchill, Bennett & Churchill* of Milwaukee, and oral argument by *W. H. Churchill.*

For the respondents there was a brief by *Geo. E. O'Connor* of Eagle River and *Eberlein & Larson* of Shawano, and oral argument by *Albert S. Larson.*

CROWNHART, J. On the 30th of August, 1907, Charles August Miller, being the owner of government lot 5 in section 25, township 40 north, of range 10 east, Vilas county, Wisconsin, containing about twenty-eight acres, conveyed a parcel of said lot to Chris Wunderlich by warranty deed, which parcel was described in said deed as follows:

"The following described real estate situated in the county of Vilas and state of Wisconsin, to wit: Commencing at the meander post on the section line between section 25 and 26, town 40 north, range 10 east, on the south side of the Eagle river; thence south along the section line between said sections 25 and 26, ten chains; thence east at right angle to the south shore of the Eagle river; thence northwesterly along the south shore line of the Eagle river to the meander post, being the place of beginning. It is the understanding and agreement that the above described piece of land contains five acres and that an accurate survey is to be made of the same and the lines established, when another deed will be given."

Thereafter, on September 17, 1920, Chris Wunderlich conveyed said parcel of land to *G. F. Sanborn* and *Mayme E. Sanborn,* the plaintiffs herein. The deed referred back to the original conveyance above described, as recorded in

book 23 of Deeds, page 14, of the records of Vilas county, and contained this provision:

"It is understood this description covers about five acres of land more or less; and this deed is intended to convey the premises conveyed by deed recorded September 9, 1907, at 2:50 o'clock p. m., in volume 23 of Deeds, on page 14, in the office of the register of deeds of Vilas county, Wisconsin. . . ."

On the 27th of June, 1917, the administrator of the estate of Charles August Miller, by administrator's deed, conveyed the remaining portion of said government lot 5 to the Sanborn Company, a corporation, in which deed the remaining portion of said premises was described in the following language:

"All of the following described real estate, to wit: Government lot 5 of section 25, in township 40 north, of range 10 east, Vilas county, Wisconsin, except a part thereof described in volume 23 of Deeds, on page 14, Vilas county records."

Thereafter the defendants came into possession and ownership of said last described property by mesne conveyances, each of said conveyances describing said property substantially as in the original conveyance above set out.

The plaintiffs below claimed that the deed from Miller to Wunderlich conveyed the north five acres of said government lot 5. The defendants below contended that the deed from Miller to Wunderlich conveyed only the portion that is included within metes and bounds, being about three acres.

The court, considering that the deed was capable of different constructions, took testimony as to the facts and circumstances surrounding the parties at the time of the execution thereof, for the purpose of determining its true construction according to the intent of the parties. *Polebitzke v. John Week L. Co.* 163 Wis. 322, 158 N. W. 62.

It appears that government lot 5 is bounded on the easterly side by a meandered stream, and on the west side by a section line, the section line and meandered stream meeting at the northerly point of the lot.   At the time of the conveyance from Miller to Wunderlich the parties agreed upon a conveyance of five acres.   No surveyor was near at hand, and the parties estimated upon a map what they regarded as five acres, inclosed within certain metes and bounds. They thereafter paced off from the northerly point of said property, along the section line southerly, ten chains, and there set a post, and from that post they paced a line at right angles to the section line to the meandered stream, where another post was set, and then included this property by metes and bounds in the conveyance.   But to this description they added the following:

"It is the understanding and agreement that the above described piece of land contains five acres and that an accurate survey is to be made of the same and the lines established, when another deed will be given."

It is this sentence in the conveyance that is to be considered in interpreting the deed.   Manifestly, on the face of the deed the intent is plain, that is, to convey five acres; but when we consider the facts surrounding the giving of the deed, it further appears that the parties were unable to accurately describe the five acres, and they therefore left the exact description to be subsequently determined and corrected in another deed.

This court, in *Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 187 N. W. 978, held that, in ascertaining the boundaries of land conveyed, the test is the real intention of the parties to the conveyance; and this is to be gathered from the entire writing, and, when necessary, by resort to the circumstances surrounding the transaction.

No survey of the property was thereafter made until just prior to the commencement of this action, when the

respondents and appellants joined in having a survey made. It was then found that the portion included within the metes and bounds of the deed from Miller to Wunderlich embraced only about three acres. The southerly line was then established 551.6 feet further south, and the plaintiffs demanded in their complaint the quieting of the title to the portion therein added to the original description by metes and bounds, the defendants having made claim thereto.

The trial court found:

"That at the time of the execution and delivery of said warranty deed the said Charles August Miller received pay for, agreed to, and intended thereby to convey to the said Chris Wunderlich and the said Chris Wunderlich purchased, paid for and expected thereby to receive a conveyance of the north five acres of government lot 5, in section 25, in township 40 north, of range 10 east, and later to receive another deed containing the correct boundary lines of the five acres thereby conveyed and intended to be conveyed. That it was agreed that as soon as an accurate survey could be made defining the lines of the north five acres of said government lot 5 a corrected deed would be executed by the said Charles August Miller and wife to the said Chris Wunderlich.

"That immediately after the execution and delivery of said deed to the said grantee, Chris Wunderlich entered into the possession of the premises conveyed to him under said deed without having any survey made or inclosing the premises by any fence, claiming title to the north five acres of said government lot 5, and erected a building and boat house thereon, and with his brother Theodore F. Wunderlich occupied the same as his summer cottage until the conveyance of said premises to *G. F. Sanborn* and *Mayme E. Sanborn* in September, 1920, as hereinafter set forth."

The court also found:

"That immediately after the execution and delivery of said conveyance [from Wunderlich to the *Sanborns*] the said plaintiffs *G. F. Sanborn* and *Mayme E. Sanborn* en-

tered into possession of said premises as their summer residence, claiming title to the north five acres of said government lot 5."

We have no difficulty in reaching the conclusion that the true boundary, according to the intent of the parties, was to include the north five acres of said government lot 5, but it is contended that the plaintiffs and their predecessors in title waived any right to claim said additional two acres and were estopped from making claim thereto. The claim of waiver is based upon the long lapse of time between the giving of the original deed and the claim for reformation. Waiver is the intentional relinquishment of a known right. 27 Ruling Case Law, 904. There is nothing in the testimony to indicate that the plaintiffs or their predecessors in title voluntarily relinquished any claim to the full five acres. On the contrary, every deed of conveyance, either of the five-acre tract or of the twenty-three-acre tract, referred back to the original deed from Miller to Wunderlich as fixing the rights of the parties. Further, it appears that the plaintiffs and their predecessors in title have paid the taxes on five acres as included in their deed, and the defendants and their predecessors in title have paid the taxes on the remaining twenty-three acres in the lot, said property having been so assessed by the taxing authorities. By the same token there is no estoppel against the plaintiffs' claim. The plaintiffs conveyed the twenty-three-acre portion of said lot to John Robida and Exilda M. Robida by warranty deed, using the same description, to wit:

"Government lot 5 of section 25, township 40 north, of range 10 east, except that part heretofore conveyed to Chris Wunderlich and described in volume 23 of Deeds, page 14."

It is claimed that the plaintiffs had put a fence on the south boundary line of the three acres as described by metes and bounds; that they pointed out by metes and bounds the property so conveyed, and that the Robidas relied upon such description. However, the fence was so placed in

error as to where the true line was, and the court found in favor of the plaintiffs. The finding of the court is fully justified. *Mr. Sanborn* testified:

"I recall the occasion when Exilda Robida and I and Mr. Sullivan and John Robida were upon this land in 1918, just before they purchased the property. Mr. Sullivan took Robida down to the meander post, and paced up ten chains. I went down with them. Exilda went down along the road. They paced up ten chains and then went right-angle to the lake; just pacing with the pocket compass. Mr. Sullivan told them that that was the description in the deed; but that the deed called for five acres. . . . He came back and then Sullivan paced off what he thought, and what John apparently agreed with him, would make approximately the five acres; and run across to the lake. . . . They talked about it—talked about if Wunderlich demanded a deed for the other—for the five acres—that he could get it. That was on record. A part of the record. We told them we would give them a deed subject to that deed, and represented to them that the deed would call for five acres if Wunderlich demanded it."

On cross-examination Exilda Robida testified:

"*Mr. Sanborn* told us that this piece of land was supposed to contain five acres, but in the deed that it stated that if it didn't contain five acres that a new deed was to be given, and he stated to us, 'Why Mr. Miller is dead;' so he says, 'Who is going to give the new deed? Would you?' Of course we said we wouldn't if we didn't have to."

The defendants who purchased from the Robidas are in no better position than their grantors. In this case the questions of waiver and estoppel depend upon the facts, and the court has found contrary to the defendants' position upon sufficient evidence.

*By the Court.*—The judgment of the circuit court is affirmed.

VINJE, C. J., and ROSENBERRY and ESCHWEILER, JJ., dissent.