Davis and others, Respondents, vs. Kurella and wife, imp., Appellants.

*November 10—December 7, 1937.*

300

For the appellants there were briefs by *G. M. Sheldon* of Tomahawk and *John P. Ford* of Wausau, and oral argument by *Mr. Ford*.

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye*.

FAIRCHILD, J.   As appears from the recital of the findings of fact, the plaintiffs' claim to the land depends upon an intention of the grantor and grantee to convey in the 1918 deed and to receive the whole of the point of land, the title to which is here in dispute.   The circumstances of controlling importance are that Mrs. Davis, for the purpose of enabling her son to accomplish certain transactions in which he was interested, conveyed her farm to him, including the disputed portion referred to as Davis Point.   After he had borrowed money and established himself as a farmer upon lot 3, he attempted to convey to his mother that portion of the lot described as Davis Point.   His deed contained, however, a defective description.   Davis Point is connected with the shore by a very narrow isthmus; it juts out northward into Lake Crescent.   The intersection of the west line of lot 3 and the lake, used as a place of beginning, lies some distance west of Davis Point.   The Kurellas contend that the deed of 1918 describes a boundary which again intersects the shore at a point west of Davis Point and which fails to inclose it.

Plaintiffs claim that the intention was to describe a boundary which would intersect the lake at a point east of the isthmus, and hence would include Davis Point within the piece conveyed. In preparation of the 1918 deed, Davis himself attempted to survey the intended boundary. His error resulted from his misjudging the exact direction which would be taken by a line paralleling the west line of the lot. Following the description in the 1918 deed, the six-rod course at the easterly end of the parcel apparently would not intersect with the lake shore. It was assumed, however, by Davis and his mother, as well as by all who were interested, with the possible exception of the Kurellas, even they having had sufficient notice to put them on their guard, that Davis Point had been conveyed to Mrs. Davis, and that she claimed the Point under and by virtue thereof. This state of facts favors the integrity of the plaintiffs' claims to Davis Point. *Sanborn v. Miski,* 190 Wis. 513, 209 N. W. 759. Mrs. Davis' house was there, she fenced the Point in, paid taxes on it, and excluded all others from it. All the evidence in connection with the management of the property is relevant (1 Elliott, Evidence, § 179), and indicates a possession by her that was open, notorious, and exclusive. 5 Thompson, Real Property, § 4247. All her acts were consistent with an ownership in fee of the Point and the strip for road purposes to the west. It would thus seem that, unless the greater rights of an innocent purchaser exist to destroy her title, it should be confirmed in her. The mortgages outstanding against the property at the time of the conveyance to Mrs. Davis in 1918 have been fully paid. The defendants' claim is founded on a deed which conveys lot 3 to them excepting certain premises. This was in the language of the defective description. Kurella's claim that he considered himself the owner of all except the portion actually described was not sustained below. The facts as found by the trial court do not permit defendant to

hold the position of innocent purchaser. The application for loans made by Kurella, the investigations made by the representatives of the Federal Land Bank and the Federal Farm Mortgage Corporation, and the fact that Mrs. Davis had not been joined as a defendant in intervening foreclosures on the balance of lot 3, indicate an understanding by all concerned that Mrs. Davis had an interest in the premises now claimed by her successors, and that the title to the Point was held by another than the owner of the balance of lot 3. The Kurellas, therefore, are in no position to take advantage of the mistaken description, it appearing that they have not been misled or placed at any disadvantage by the act of anyone adversely interested to them, but on the contrary were fully advised of the existence of the interest of Mrs. Davis. *Gall v. Gall,* 126 Wis. 390, 105 N. W. 953.

The trial court found that Joseph Davis had agreed at the time of Mrs. Davis' conveyance to him in 1917 to convey the Davis Point to his mother. The existence of a contract may be shown by a writing containing its terms or by circumstances tending to establish their existence and, where some formality lacking is not vital to its effectiveness, it may be upheld. Upon the question as to whether there be sufficient evidence to show an agreement between Joseph and Mrs. Davis to reconvey to her the particular land, the trial court, having excluded as incompetent Joseph's testimony as to his oral "understanding" with his mother, still had before it as evidence the fact that a portion of the land deeded to Joseph in 1917 was reconveyed to Mrs. Davis in 1918; the measurement by Joseph of the land; the giving of the details for the description to an attorney to draw a deed, with the statement that the deed was to include all of the Davis Point on which Mrs. Davis lived; that it was Joseph's belief that the six-rod line intersected the lake on the east side of the isthmus; the so-called correction deed correctly describing the premises

which was executed while all interested parties were living, after a survey had been made and a dispute between Mrs. Davis and the Kurellas had occurred. When the dispute arose, Mrs. Davis acquainted Joseph with the fact, and this was followed by a survey, and the correction deed. This is evidence warranting the inference that an attempt was being made to carry out a previously made agreement. The learned trial judge said:

"The first question of doubt or difficulty in this case is the question of fact whether the evidence is sufficient to establish an agreement on the part of Joseph O. Davis to reconvey to his mother, Lucy G. N. Davis, title to the point in question where she lived during a portion of each year, and the strip extending westerly therefrom to the west side of Government Lot 3, and the court is of the opinion that the evidence is sufficient.

"The deed made by Joseph O. Davis to Lucy G. N. Davis, May 8, 1918, contained a description made up from rough measurement which Joseph O. Davis himself made, and was intended, in the opinion of the court to connect the narrow neck of the point with the west side of Government Lot 3, and the east end of the strip was intended to be coincident with the width of the neck of the peninsula. The measurement was a rough one, made up by an unskilled man, but the court believes that the intention was to include the strip and the point, as it had been previously agreed. The error was perpetuated throughout many other instruments and apparently was not discovered until Kurellas made claim to the point. Still at this point Mrs. Davis was in possession and procured a correction deed, and apparently believed that her title was then fortified.

"It is argued that the deeds to Mrs. Davis were voluntary conveyances and that there was no contract obligation to make them, and hence are not a subject for reformation by decree of court. But the court is of opinion that such was not the case.

"Equity will effectuate that which was in accord with the agreement of the parties by vesting the title where it was intended to be."

The Kurellas lived in the neighborhood for many years, where it appears to have been generally understood that Mrs. Davis was the owner of the Point, and never attempted to exercise ownership or control over Davis Point even after purchasing the farm, and no question as to the sufficiency of Mrs. Davis' deed was ever raised until after the dispute over damage caused by Kurella's cattle in trespassing upon Davis Point. It was after this that a survey was made and the accurate description formed and the correcting deed from Joseph to Lucy Davis was recorded. If a trust in land is originally declared only by parol, but later is executed by the trustee, the trustee's deed, as against one not an innocent purchaser for value, will relate back to the date of the parol declaration. *Blaha v. Borgman,* 142 Wis. 43, 124 N. W. 1047. The findings as to notice are amply sustained and sustain the conclusion reached by the trial court.

*By the Court.*—Judgment affirmed.