TRIMBLE, Respondent, v. WISCONSIN BUILDERS, INC.,
Appellant.*

*No. 648 (1974). Argued April 7, 1976.—Decided May 4, 1976.*
(Also reported in 241 N. W. 2d 409.)

For the appellant there were briefs and oral argument
by *Burton A. Strnad* of Milwaukee.

For the respondent there was a brief by *Fricker & Bailey* and oral argument by *Thomas A. Bailey*, all of
Milwaukee.

For the appellant there was a responsive brief filed by
*Burton A. Strnad* of Milwaukee.

For the respondent there was a brief filed by *Janet P. Koerber* of Milwaukee.

---

* Motion for rehearing denied, with costs, on June 30, 1976.

HEFFERNAN, J.   The jury in this case found that two writings, subscribed to by the plaintiff, E. C. Trimble, and Wisconsin Builders, Inc., by its president, R. D. Trebilcox, constituted a contract by which part ownership of a building erected by Wisconsin Builders was to be conveyed to Trimble. The trial judge declined to enter a directed verdict for the defendant and sustained the jury's verdict for the plaintiff. We conclude that the writings were insufficient under the statute of frauds and that a directed verdict and judgment should have been entered for the defendant. We reverse.

The facts adduced at trial show that Trimble obtained an option to purchase two lots, lots 19 and 20, in block 16 and located at 6914 West Appleton Avenue, Milwaukee. He paid $100 for the option, and it was agreed that the option could be exercised upon the payment of $18,500 on the day of closing, which was not to be later than June 20, 1965. Trimble testified that he thought this was a desirable site for the construction of a commercial building. He did not, however, have the funds to purchase the land or proceed with construction. He stated that he eventually spoke with Robert Trebilcox, president of Wisconsin Builders, who agreed to purchase the land and construct such a building if Trimble would assign the option to purchase to Wisconsin Builders and if, in addition, Trimble would do some troubleshooting for him on other buildings. For these services, Trimble was promised $500 a month. Thereafter, on May 3, 1965, and on May 5, 1965, respectively, Trimble and Trebilcox, ostensibly for Wisconsin Builders, signed two writings, which were drafted by Trimble.

The May 3 document, which is handwritten, provides:

"May 3 1965

"In consideration for including Wisconsin Builders Inc. on the option to buy property at 6914 W Appleton Ave, Milw. it is agreed that Eugene C Trimble is to recieve equal share of ownership of comerical building to be built. It is also agreed that Wisconsin Builders

Inc will arrange financing and contruction of building Eugene Trimble agrees to work at the building during construction suppervising the trades and leaseing the building  Eugene Trimble also agrees to get bids from trades pryor to the start of contruction.

> Wisconsin Builders Inc
> s/ R. D. Trebilcox
> President
> s/ E. C. Trimble"

On May 5, 1965, a document bearing the caption, "Waiver of Lien and Agreement," was signed by Trebilcox and accepted by Trimble.  It provides:

### "WAIVER OF LIEN AND AGREEMENT

May 5 1965

"For value received, I hereby waive 50% ownership and rights and claims for lien on land and on buildings about to be erected, ~~being erected, erected, altered or repaired~~ and to the appurtenances thereunto,

for Eugene C Trimble and Wisconsin Builder Inc owner ————, by Wisconsin Builder Inc. General Contracters contractor ————, for consideration of option to buy contract from Eugene C. Trimble at $18,600 same being situated in Milw County, State of Wisconsin, described as Gilbert Wendorf Property 6914 W Appleton Ave. *Failure to Deliver Said Option* or *Agreement to Purchase Will Make This Agreement Void,*

for all labor performed and for all material furnished for the erection, construction, alteration or repair of said building and appurtenances.  All contracts and leases to be mutually agreed upon, building to be erected is to resemble building at
6055 W Fond Du Lac Ave. ..........................

Accepted
        s/ E. C. Trimble
                        s/ R. D. Trebilcox, Pres."

This latter document utilized a waiver-of-lien form, which was modified, with the alleged intent to state an agreement between the parties.  It was inappropriate for the purpose intended and poses the principal problem

which leads us to conclude that the agreement did not satisfy the statute of frauds.

On May 5, the same day that the document above was executed, the owners of lots 19 and 20 executed an agreement to purchase, which named Wisconsin Builders, Inc., and E. C. Trimble as buyers. The option rights originally owned by Trimble then became the joint property of Trimble and Wisconsin Builders. However, at the time the property was conveyed, pursuant to the agreement, the sole grantee was Wisconsin Builders. There was testimony at trial by the attorney for the sellers that Trimble directed that the deed was to convey the property to Wisconsin Builders only.

Wisconsin Builders, after the closing, arranged for the construction loan, undertook long-term financing, assumed all the insurance risks, and proceeded with the construction of the building. Trimble assisted in getting bids from subcontractors and performed some supervisory functions. During a portion of the construction time, Trimble received $500 a month to act as a troubleshooter, not only on this particular project but also in respect to tenant-landlord problems that arose in respect to other buildings owned and operated by Wisconsin Builders. Wisconsin Builders, however, assumed full ownership and management of the building that was eventually constructed on the optioned property.

Trimble commenced his action, contending that the agreement consisting of the writings of May 3 and May 5, 1965, had been breached by Wisconsin Builders. Originally a conveyance of one-half of the equity in the building was demanded, but during the pendency of the action, Wisconsin Builders sold the property, and the parties, apparently by agreement, proceeded on the theory that Trimble was entitled only to damages measured by one-half of the equity.

The parties agree that the two writings can be construed together and that if any agreement exists it is the result of those two writings.

The defendant, Wisconsin Builders, denied that any agreement was entered into that intended to convey 50 percent ownership of the property at 6914 West Appleton Avenue and alleged that the writings failed to comply with the statute of frauds. It also posed other defenses, including the allegation that the alleged agreement was insufficiently certain and definite to constitute a contract even though it were found to be in technical compliance with the statute of frauds.

The defendant specifically pleaded noncompliance with the statute of frauds; and on its motion for directed verdict, it reasserted that defense. The trial judge chose, however, to disregard that motion and concluded that the only question was whether the contract was sufficiently definite and certain. This, he held, was a question for the jury.

The trial judge failed to file a memorandum opinion in respect to any of the motions made during the course of the trial or in respect to motions after verdict. We are, accordingly, hampered in our consideration of this case by the fact that we have nothing to show the basis of the judge's reasoning process or the factors relied upon in making his ultimate decision. We repeat the admonition which appears in *Oremus v. Wynhoff* (1963), 20 Wis. 2d 635, 644, 123 N. W. 2d 441, "that trial courts render written or oral opinions in all significant matters before them for decision."

The defendant, Wisconsin Builders, Inc., relies on sec. 706.02, Stats., as the pertinent statute of frauds. This statute is not applicable to the instant case, for the agreements were entered into in 1965 and the applicable statute is sec. 240.08, Stats. 1963, which has since been repealed by ch. 285, Laws of 1969, which also created sec. 706.02. Sec. 240.08 provides:

"240.08 [1963] **Contract for lease or sale to be in writing.** Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made or by his lawfully authorized agent."

However, it was not inappropriate for the defendant, Wisconsin Builders, to place substantial reliance on sec. 706.02, Stats., because that statute represents at least a partial codification of prior Wisconsin statutory and decisional law. Sec. 706.02, in part, provides:

"706.02 **Formal requisites.** (1) Transactions under s. 706.01 (1) shall not be valid unless evidenced by a conveyance which:
" (a) Identifies the parties; and
" (b) Identifies the land; and
" (c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and
" (d) Is signed by or on behalf of each of the grantors; and
" (e) Is signed by or on behalf of all parties, if a lease or contract to convey; . . ."

These requirements, by sec. 706.01, Stats., "govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." The contract, without question, falls within the statute. The agreement was for the assignment of an option, and allegedly Trimble was to receive a 50 percent interest in a building to be constructed. These are interests that fall within the terms of the statute.

The parties are identified, and the writings are subscribed to by all the parties who would be affected by a contract. We conclude, however, that the documents, even

when read together, fail to identify the land and fail to identify the interest conveyed.

We should also state that both of the parties rely upon the law which is applicable under sec. 240.08 of the 1963 statutes to "memoranda." While the parties refer to the documents with considerable lack of consistency, alternatively as a contract or as a memorandum in writing, what we deal with here is not a memorandum, which, under the statute of frauds, is evidence in writing of a preexisting oral contract. An oral contract for the conveyance of an interest in land is void unless there is a memorandum that conforms to the statute of frauds. *Handlos v. Missman* (1959), 7 Wis. 2d 660, 665, 97 N. W. 2d 419.

The record made at trial shows that there was no prior oral agreement for which the May 3 and May 5 writings constituted a memorandum. If there is a contract between the parties, it is contained within the four corners of those documents. It is immaterial, however, to the law relative to this case whether the writings constituted a memorandum or a contract. The statute of frauds is applicable to both types of writings. Both a memorandum or a contract must contain all the elements essential to satisfy the statute.

This court has consistently held that to comply with the statute, the contract or memorandum must be reasonably definite in respect to the property conveyed. *Wadsworth v. Moe* (1972), 53 Wis. 2d 620, 623, 193 N. W. 2d 645; *Wirthwein v. Dailey* (1923), 182 Wis. 200, 201, 196 N. W. 221; *Hannon v. Scanlon* (1914), 158 Wis. 357, 361, 148 N. W. 1082; *Estate of Rosenthal* (1945), 247 Wis. 555, 561, 20 N. W. 2d 643; *Durkin v. Machesky* (1922), 177 Wis. 595, 188 N. W. 97; *Thiel v. Jahns* (1947), 252 Wis. 27, 30 N. W. 2d 189; *Stuesser v. Ebel* (1963), 19 Wis. 2d 591, 120 N. W. 2d 679; *Wiegand v. Gissal* (1965), 28 Wis. 2d 488, 137 N. W. 2d 412, 138 N. W. 2d 740.

Prior cases of this court hold that, for a description to be adequate, the contract cannot merely describe the building to be conveyed but must also describe the land that accompanies the building. *Wiegand, supra.* Under some circumstances, the inadequacy of descriptions in the contract may be amplified by extrinsic evidence, but only in circumstances where the document itself provides some foundation, link, or key to the extrinsic evidence. In the instant case there are no links which would make any extrinsic evidence applicable to aid in the construction of the contract or to enable it to satisfy the statute of frauds.

A careful study of the two documents confirms what is apparent on a cursory inspection. Even when read together, they fail to describe with any degree of reasonable certainty the property in which Trimble claims he has acquired a 50 percent interest. It is not apparent from the agreements that anything was conveyed to Trimble by the mere fact that Wisconsin Builders "waived" ownership and rights. Nowhere does the May 5 document state that Trimble received anything by virtue of Wisconsin Builders' equivocal "waiver."

On the other hand, the document of May 3 does state unequivocally "that Eugene C. Trimble is to recieve equal share of ownership of comerical building to be built."

Reading these documents together, where, as here, the parties have agreed they should be, it is apparent that some conveyance or agreement of conveyance in respect to 50 percent of a commercial building was intended; but it is not the intent of the parties which governs in respect to satisfying the formal requisites of the statute of frauds. A reasonable certitude in respect to the subject matter of the agreement must be expressed in the contract itself.

In the lawsuit, Trimble asserts a right to one-half of the entire property located at 6914 West Appleton Avenue

—both the land and the building upon it. But the documents, when read together, do not define whether Trimble was only to have a 50 percent interest in the building to be constructed or whether he was also to have a 50 percent interest in the entire parcel of land.

The May 3 agreement merely states that Trimble is to receive an equal share "of comerical building to be built." The May 5 agreement waives, apparently on the part of Wisconsin Builders, "50% ownership and rights and claims for. *lien* on land and on buildings about to be erected." (Emphasis supplied.)

While we doubt that the document captioned, "Waiver of Lien and Agreement," had any effect in respect to either contracting to convey an interest in land or in actually conveying an interest in land, giving that agreement the effect that Trimble urges results in an ambiguity on its face. In one portion it refers to the waiver of ownership "on buildings." Further on in the same May 5 document, the reference is to "said building."

Additionally, the two documents when read together provide no certainty in respect to the location of the building which allegedly will be erected.

In the May 3 agreement there is only a reference describing the real estate covered by the option. In consideration of Trimble's inclusion of Wisconsin Builders, Inc., as a buyer of the property under option, Trimble is to receive "equal share of ownership of comerical building to be built." The intended location of that commercial building is not described in the May 3 document, nor is its proposed location stated or clarified in the agreement of May 5. The only property described is that which refers to the real estate under option. There is no statement expressing the intent that the proposed building was to be erected on property under option. The pertinent section of the May 5 agreement reads:

"I hereby waive 50% ownership and rights and claims for lien on land and on buildings about to be erected . . . for consideration of option to buy contract from Eugene C Trimble at $18,600 same being situated in Milw County, State of Wisconsin, described as Gilbert Wendorf Property 6914 W Appleton Ave. *Failure to Deliver Said Option or Agreement to Purchase Will Make This Agreement Void.*"

None of the language in either of the agreements describes the location at which a building will be erected. The only location referred to is that of the optioned property, but nowhere in either of the documents or in both of the documents when construed together is there any language that leads to a reasonable certainty that the commercial building is to be built on the property site covered by the option. While this may well have been the intent of the parties, that intent is nowhere specifically stated, as it must be to conform with the statute of frauds.

The only intimation of the type of building is furnished by the statement in the May 5 portion of the agreement that "Building to be erected is to *resemble* building at 6055 W Fond Du Lac Ave." (Emphasis supplied.) The record contains the testimony of Trimble that the building which was eventually erected on West Appleton Avenue resembled the building on West Fond du Lac Avenue only in the respect that the square footage was about the same. There thus is no certainty in respect to the type of building to be constructed.

Returning again to the May 5 agreement, which Trimble sees as a modification or clarification of the May 3 document, we conclude that it is completely ineffective to convey any legal or equitable rights to Trimble. Nowhere does this agreement convey, give, or promise Trimble anything. The most that can be said is that Trebilcox, apparently for Wisconsin Builders, Inc.— although even that is not made clear, since no corporate seal is affixed—waives:

"50% ownership and rights and claims for lien on land and on buildings about to be erected. . . for all labor performed and for all material furnished for the erection, construction, alteration or repair of said building and appurtenances."

It is obvious, and counsel confirmed this at the time of oral argument, that these agreements, which we consider fatally defective, were prepared by a lay person having no knowledge of the law. Irrespective of the intent of the parties, the agreements failed to conform with requirements of the statute of frauds which are mandatory wherever an interest in land is to be affected. As counsel for Trimble acknowledged at oral argument, this confusion would undoubtedly have been avoided had the parties consulted a lawyer in advance of the preparation of their "agreement."

We also note that, even were the address, 6914 West Appleton Avenue, to have some significance, and even though the parties apparently thought of the property as a single parcel, the legal description that appears upon the deed and upon the option refers to two separate lots, lots 19 and 20. There is nothing in the record to show whether any commercial building was eventually erected on lots 19 and 20 or whether a commercial building was erected on lot 19 but not on lot 20, or on lot 20 but not on lot 19.

We have consistently held, even where the building itself is described with reasonable certainty, that it is necessary to know with reasonable preciseness the extent of the land areas that are intended to be conveyed with the building. *See: Wiegand v. Gissal, supra; Wadsworth v. Moe, supra; Stuesser v. Ebel, supra.*

We conclude that the documents are fatally vague and uncertain under the standards of the statute of frauds in respect to what Trimble was purchasing or receiving by the assignment of the option to Wisconsin Builders.

Whether Trimble was to receive an equal share of both land and buildings is unclear from the face of the documents. Whether Trimble was to receive an equal share of the building to be built on the property purchased from the Wendorfs, or an equal share of some building to be constructed elsewhere is equally uncertain. It is also unclear whether he was to receive the equal ownership of but one building or the equal ownership of more than one building. The contracts on their face are invalid because they fail to identify the land involved and fail to identify the interest conveyed.

It is also apparent from this analysis, the statute of frauds aside, that the contract was so indefinite and uncertain that it failed to spell out the essential commitments and obligations of each party. *Witt v. Realist, Inc.* (1962), 18 Wis. 2d 282, 297, 118 N. W. 2d 85. Even the extensive testimony of Trimble during the course of the trial showed that he had only the vaguest idea of what he expected to receive by virtue of the purported contract.

We conclude that the trial court committed an error of law when it failed to grant a directed verdict on the ground that the writings were invalid because they failed to satisfy the mandatory requirements of the statute of frauds. The judgment is reversed and the cause is remanded for the dismissal of the plaintiff's complaint on the merits.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.