In re Joseph A. GUSTIE, Jr., Debtor.

The FIRST NATIONAL BANK OF BOSTON, Plaintiff,

v.

Stephen M. RICHMOND, Trustee, et als., Defendants.

Bankruptcy No. 79–1627 JG.

United States Bankruptcy Court, D. Massachusetts.

July 22, 1983.

---

Stephen Richmond, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., trustee.

Francis Matera, Joseph Pisarri, Corwin & Corwin, Boston, Mass., for debtor/defendant.

Richard Mercer, Boston, Mass., for The First National Bank/plaintiff.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The plaintiff, First National Bank of Boston ("The Bank"), contends that the trans-

fer of title to real estate at 170 Ridgeway Road, Weston, Massachusetts ("the Weston property") by the debtor, Joseph A. Gustie, Jr. ("the debtor") or ("Joseph Gustie") to his brother and sister-in-law, Frank and Isabelle Gustie ("the Gusties" or "Frank Gustie") was a fraudulent conveyance under Massachusetts General Laws Chapter 109A Section 4[1] and under Section 67d(2)[2] of the former Bankruptcy Act.[3] The Bank alleges that Joseph Gustie, while insolvent, transferred the Weston property to his brother Frank Gustie for less than fair consideration. The Bank's amended complaint also seeks to establish the validity and priority of the Bank's judicial lien on the Weston property by reason of a real estate attachment in the amount of $500,000 obtained on all property of the debtor on November 8, 1978 in Middlesex Superior Court.

The complaint of Stephen M. Richmond, the Chapter XII trustee ("the trustee") seeks to avoid the debtor's transfer of the property to the Gusties on May 19, 1978 as a fraudulent conveyance, alleging that the transfer was made by an insolvent debtor for less than fair consideration, and that the transfer was made with intent to hinder, delay, and defraud present and future creditors.[4] The trustee seeks to set aside the transfer pursuant to Section 70(e)(1) of the

Bankruptcy Act.[5] The defendants, in answer to the complaints, denied they were the recipients of a fraudulent transfer, asserting that Joseph Gustie held only bare legal title to the Weston property, had no ownership interest in the property, and at all material times they were and are the true owners of the Weston property. The Court ordered consolidation of the complaints for trial.

## FINDINGS OF FACT

Based upon the stipulated and admitted documents, and testimony heard during the three days of trial, I find the following facts as required by Bankruptcy Rule 752.

Frank and Isabelle Gustie are the brother and sister-in-law of the debtor, Joseph A. Gustie, Jr., deceased. Joseph Gustie was a real estate developer in the Route 9 area of Framingham, Massachusetts in connection with two corporations, J.A.G., Inc. and Framingham Arbor Corporation, and a partnership, Consulate Realty Trust. In 1978 the two malls owned by Consulate were operating and the Framingham Arbor project was under construction.

Joseph Gustie had a banking relationship with the First National Bank of Boston. The loan officer with whom he dealt was David McKown. During the period from 1972 to 1978 Joseph Gustie executed eigh-

---

1. Mass.Gen.Laws Chapter 109A Section 4 provides:

 Conveyances by insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. M.G.L.C. 109A Section 4 (St.1924).

2. Bankruptcy Act of 1898, Section 67d(2), 11 U.S.C. Section 107(d)(2) (Repealed 1978) (2) every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or will be thereby rendered insolvent, without regard to his actual intent.

3. This is a case brought under the former Bankruptcy Act of 1898, now repealed.

4. Mass.Gen.Laws Chapter 109A Section 7 provides:

 Conveyances made with intent to defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors. M.G.L.C. 109A Section 7 (St. 1924).

5. The Bankruptcy Act of 1898, Section 70e(1), 11 U.S.C. Section 110(e)(1) (Repealed 1978) provides:

 e.(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

teen promissory notes payable to the Bank both in his individual capacity and as a guarantor on the obligations of J.A.G., Inc., Framingham Arbor, Paul G. Holian (one of the Consulate partners) and the Estate of Joseph A. Gustie, Sr. which totalled approximately $1,000,000 in principal amount. Joseph Gustie had executed many of the notes in blank, leaving them in the possession of David McKown. This procedure was followed to accomplish a speedy transfer of funds when Joseph Gustie needed money. Generally, upon Joseph Gustie's request Mr. McKown would fill in the blanks noting the interest rate on the document, and then would inform Joseph Gustie of the particulars. By the end of May 1978 Joseph Gustie on joint and several obligations owed the Bank $1,184,928.23.

Frank R. Gustie and Isabelle M. Gustie, husband and wife, purchased the real estate and house located at 170 Ridgeway Road, Weston, Massachusetts from Mr. and Mrs. Harvey on November 10, 1955. The tax stamps indicated consideration of approximately $55,000 was paid. There was no evidence presented that the Frank Gusties purchased the house with any funds other than their own and the proceeds of a note secured by a mortgage. Joseph Gustie, the debtor, played no part in this transaction. Since 1955 to the present the Frank Gustie family has resided here. The title to the property remained in the name of Frank and Isabelle Gustie as tenants by the entirety until 1965. During the ten years preceding 1965, Frank Gustie made all mortgage, tax, and insurance payments.

On October 19, 1965 Frank and Isabelle Gustie executed a deed transferring title to the Weston property to Joseph A. Gustie, Jr. At this time the property was worth $150,000. Although the deed's tax stamps reveal $55,400 in consideration paid, Joseph Gustie did not pay any consideration for the transfer. The reason for the transfer was Frank Gustie's worsening financial condition. During this period, Frank Gustie's restaurant, the Abner Wheeler House, was not operating profitably and had a substantial liability for meals taxes, for which Frank Gustie was personally liable. After discussing the matter with his father and brother, Frank transferred title to Joseph. The transfer was intended to accomplish two purposes: to insure that the home was protected from Frank's creditors, and, to insure that Frank Gustie did not jeopardize his equity position in the house because he owed his father $25,000. It was orally agreed that Joseph was to hold title for the benefit of Frank Gustie and his family. There was no agreement as to how long Joseph Gustie was to hold title, but it was agreed that equitable ownership was to remain with the Frank Gusties.

Two days after the transfer, Joseph Gustie executed a mortgage of the Weston property to the Wellesley National Bank in exchange for a $50,000 loan. The proceeds of the loan, however, went not to Joseph Gustie but to discharge the Wellesley bank mortgage of Frank and Isabelle Gustie in the amount of $33,000 and to satisfy Frank Gustie's obligations to business creditors of $17,000. Joseph Gustie neither obtained nor received any monetary benefit in this transaction.

After the transfer of title to Joseph, the Frank Gustie family continued to reside at 170 Ridgeway Road. Frank Gustie continued to make monthly payments on the new $50,000 mortgage obtained by Joseph and continued to pay the insurance premium and real estate taxes for the house. All the bills for household expenses remained in the name of Frank and Isabelle Gustie. They deducted the mortgage interest and taxes paid on their income tax return. The Frank Gusties did not pay Joseph rent for the use of the premises. While he held title to the Weston property, Joseph lived at his own residence in Belmont.

On two occasions while the property stood in the name of Joseph Gustie, the Weston property was pledged as collateral for Joseph Gustie's own obligations. On August 13, 1971 Joseph Gustie borrowed $20,000 from the Atlantic Corporation and granted a mortgage on the Weston property, and on July 31, 1973 Joseph again granted a mortgage to Atlantic to secure repay-

ment of a $70,000 note. The Atlantic Corporation also took two other parcels as collateral for this loan.

On only one of these occasions did Frank Gustie know that Joseph was mortgaging the Weston property. Joseph had asked Frank for permission to pledge the property so that he could purchase another parcel for the Deerskin Shopping Plaza, and Frank assented. On other occasions Frank refused to permit Joseph to mortgage the property.

From 1976 to 1980 seven creditors of Joseph Gustie attached the Weston property.

Frank Gustie was not aware that Joseph Gustie listed the property as an asset on three financial statements to the First National Bank dated September 1, 1971, January 7, 1975 and June 23, 1975. Another financial statement to the Bank dated May 4, 1978 does not list the Weston property as an asset of Joseph.

Joseph Gustie was instructed by the Bank officer, David McKown to list all assets. There is an evidentiary dispute as to whether Mr. McKown knew that Frank was living there. Joseph Gustie's handwritten note explains Joseph Gustie's reasons for listing the assets and also attempts to interpret McKown's state of mind concerning this issue. This note is inadmissible hearsay not within any of the exceptions to the hearsay rule set forth in the Federal Rules of Evidence Rules 803 and 804, and plays no part in reaching these findings.

I find that in granting the loans, McKown did not rely on Joseph's ownership of the Weston property. McKown testified that he based his loan decisions on the entire contents of the financial statements. Where Joseph Gustie had numerous substantial real estate interests and the bank had a long history of dealings with Joseph Gustie, it does not seem plausible that the Bank attached weight to his ownership of the Weston property. I also find that the value of the equity in this house as listed by Joseph in his financial statements is, in relation to all the other listed assets, relatively minor and that the loans would in all probability have been approved by the Bank in the absence of this listed asset. I find that McKown relied on the parties past banking relationship, and on Joseph Gustie's total asset structure, in issuing the numerous promissory notes on which the Bank's claim is based. Even if the bank officer did put some weight on Joseph Gustie's purported ownership, it was unreasonable. Mr. McKown testified that he knew that the Frank Gustie family was living there, and should have made inquiry as to Frank's interest.

In the Spring of 1978, the Framingham Arbor project remained unfinished and Joseph Gustie and his partners defaulted in their obligations to the bank, which was unwilling to extend further credit. Recognizing that the project was in financial trouble, Paul Holian suggested that Joseph Gustie transfer the Weston property back to Frank in view of the possibility that Joseph's creditors might claim the property if it remained in Joseph's name. On May 19, 1978, Joseph Gustie executed a deed concerning the Weston property to Frank and Isabelle Gustie. Although the deed recited consideration of $100, no funds were paid. At this time the property had a fair market value of between $165,000 and $185,000.

On November 8, 1978 The First National Bank obtained an attachment in the amount of $500,000 on any interest of Joseph Gustie in the Weston property, and on January 31, 1979, the Bank attached the interests of Frank and Isabelle Gustie in the property.

Joseph Gustie died in July of 1980. His will dated July 27, 1972 refers to the Weston property as "owned by me and now occupied by my brother".

## CONCLUSIONS OF LAW:

The issue presented in this case is whether the Bank and the Trustee may set

aside the reconveyance by Joseph to Frank which was in fulfillment of their oral agreement. Resolution of this issue requires interpretation of the Massachusetts law concerning the rights of a beneficiary under an oral trust in land where the trust becomes performed. If one orally agrees to hold land in trust for another an express trust is created; however, this oral trust is unenforceable by the transferor against the transferee because the statute of frauds requires that trusts concerning land, except those which arise or result by implication of law, must be evidenced by a written memorandum. Mass.Gen.Laws Chapter 203 Section 1. The oral trust in land is not void, however, merely unenforceable. *Ward v. Grant,* 9 Mass.App. 364, 401 ' N.E.2d 160 (Mass.App.1980). The trustee under the oral trust, although not compelled to do so, is not forbidden to perform the oral trust and may choose to perform his equitable obligation to reconvey. *Ward v. Grant, supra,* at 368–69, 401 N.E.2d at 162. Where the transferee conveys back to the beneficiary, the trust becomes completed and is as valid and enforceable as though it had been evidenced by a writing in the first place; the deed relates back to the oral agreement. *Bailey v. Wood,* 211 Mass. 37, 97 N.E. 902 (1912). *Muhm v. Davis,* 580 S.W.2d 98 (Tex. Civ.App.1979). *See G. Bogert, The Law of Trusts and Trustees,* Section 469 at 450–52 (2d ed. Supp.1982); *A. Scott, The Law of Trusts,* Section 42.3 at 321 (2d ed. Supp. 1982).

 It is well-settled in Massachusetts and other jurisdictions that creditors of the trustee under the performed oral trust cannot attach the reconveyance to the beneficiary as a fraudulent transfer under either the insolvency or intent provisions of the fraudulent conveyance statute. *See e.g., Ward v. Grant,* 9 Mass.App. 364, 401 N.E.2d 160 (1980); *Ferguson v. Winchester Trust Co.,* 267 Mass. 397, 166 N.E. 709 (1929); *Weinberg v. Brother,* 263 Mass. 61, 160 N.E. 403 (1923). *Accord, Murphy v. Johnson,* 439 S.W.2d 440 (Tex.Civ.App.1969); *Jose v. Pa-*

*cific Tile and Porcelain Co.,* 251 Cal.App.2d 141, 58 Cal.Rptr. 880 (1967).

Two different rationales for denying creditors the right to make claims against the property retransferred in fulfillment of an oral trust have evolved. The Massachusetts decisions reason that since the trustee had only bare legal title the retransfer pursuant to the oral agreement to reconvey does not affect the trustee's financial condition and does not deprive his creditors of any assets out of which they could satisfy claims. *Ward v. Grant,* 9 Mass.App. 364, 401 N.E.2d 160 (1980). The reconveyance cannot be considered a fraudulent conveyance by an insolvent because the equitable obligation was fair consideration for the transfer. *Liberty Trust Co. v. Hayes,* 244 Mass. 251, 138 N.E. 582 (1923). Intent to defraud creditors is also lacking because the intent of the retransfer is fulfill the oral agreement. *Ward v. Grant,* 9 Mass.App. 364, 367, 401 N.E.2d 160 (1980). Evidence of the purpose behind the retransfer is admissible and does not violate the parol evidence rule because the evidence concerning the circumstances of the conveyance is not offered to contradict the deed, but to establish the motive in the conveyance. *Ward v. Grant, supra,* at 368, 401 N.E.2d at 162.

Another theory in support of denying creditors' claims against property held under an oral trust is that where there is a confidential relation between the parties, the oral trustee holds the property in constructive trust for the beneficiary. Although the express oral trust cannot be enforced because of the Statute of Frauds, a constructive trust arises where the transferee is in a confidential relation to the grantor and the conveyance was made under an oral agreement to reconvey. The Trustee is bound to hold it in constructive trust until reconveyance. Thus although the result is the same as enforcing the oral trust, the reason is to prevent unjust enrichment. Evidence of the oral trust is admissible not to show the trust but to prevent unjust enrichment to the transferee

which would result if he were allowed to retain the property. As the trustee is not permitted to unjustly enrich himself, so are his creditors precluded from claiming the property held under constructive trust. This is the view adopted by the Restatement of Trusts (Section 44) and is followed in a number of jurisdictions. *See generally,* I A Scott, The Law of Trusts, Section 44, at 325–332 (3d ed. Supp.1982).

 The defendants' argument that a resulting trust arose in favor of Frank and Isabelle Gustie is misplaced. A resulting trust does not arise upon a gratuitous conveyance of land. *A. Scott, V The Law of Trusts,* Section 405, at 3217–20 (3d ed. Supp. 1982). The sole circumstance giving rise to a resulting trust in land is where the purchase price is paid by one and the title to the property is taken by another. *Id.* These are not the circumstances here.

Massachusetts recognizes that creditors of the oral trustee do not take subject to the equitable interest of the beneficiary in circumstances, where to enforce the trust would be against public policy. *Perkins v. Hilton,* 329 Mass. 291, 107 N.E.2d 822 (1952). In many cases the beneficiary has been estopped to assert his interest where he held the oral trustee out as the sole owner, knowing that creditors would rely on the trustee's ownership, and creditors did in fact extend credit based upon the trustee's record title. E.g. *Bryant v. Klatt,* 2 F.2d 167 (S.D.N.Y.1924); *Hutchins v. Mead,* 220 Mass. 348, 108 N.E. 67 (1915). See *A. Scott, IV The Law of Trusts,* Section 313, at 2486–90 (3d ed. Supp.1982). Where however the beneficiary is in possession of the real estate held in title by the other at the time the creditor extends credit, the creditor is charged with notice of the beneficiary's equitable interest. The creditor is charged with notice of the beneficiary's claim because he is bound to ascertain the interest of one who is in full possession of the property. *Mauricau v. Haugen,* 387 Ill. 186, 56 N.E.2d 367, 374 (1944); *G. Bogert, The*

*Law of Trusts and Trustees,* Section 69, at 454 (2d ed. Supp.1982). In these circumstances the beneficiary's participation in the straw transaction will not estop him from claiming ownership. Similarly, the doctrine of estoppel does not apply to bar the beneficiary's claim of ownership where creditors of the oral trustee extend credit not in reliance on the trustee's apparent ownership but on his general credit. *O'Gasapian v. Danielson,* 284 Mass. 27, 187 N.E. 107 (1933).

Applying these principles to the present case, I find that when Frank Gustie transferred the property to Joseph Gustie the parties expressly and orally agreed that Joseph was to hold bare legal title solely for the benefit of Frank and his family. The Frank Gusties retained all the usual incidents of ownership while title was held in the name of Joseph Gustie. Although the Frank Gusties could not compel Joseph to convey back to him, when Joseph chose to do so in 1978, the conveyance gave validity to the prior oral agreement to hold the land in trust. In reconveying to Frank, Joseph was not transferring his property, but was merely establishing the status quo. His financial condition was unaffected by the reconveyance because he was never the true owner. In addition, as a matter of law, the reconveyance was supported by fair consideration—the equitable obligation to reconvey. Therefore, all of the evidence submitted on the issue of Joseph Gustie's insolvency was superfluous, because where a transfer is supported by fair consideration, the issue of insolvency is not reached under the Massachusetts Statute and Bankruptcy Act, Section 67(d). The conveyance back to Frank Gustie was not fraudulent as to Joseph's creditors.

 I am convinced that this case does not present circumstances which would estop the Frank Gusties from asserting ownership. This conclusion is in spite of Frank Gustie's unclean hands in transferring the property in 1965 in order to place the Weston property out of the reach of his credi-

tors. Estoppel is inappropriate here for two reasons: the bank, through its agent, Mr. McKown, knew that the Frank Gustie family was residing in the Weston property. Knowledge of this fact charged the bank with the duty to ascertain the interest of Frank Gustie in the Weston property. Second, I am not convinced that the bank relied on Joseph Gustie's ownership of the Weston property in extending him credit. Instead, the bank relied on his entire financial history, credit, and past dealings with the bank in continuing to advance him funds by way of the promissory notes. Accordingly, there is no reason to estop Frank Gustie from claiming ownership of the property.

In conclusion, I find that Joseph Gustie did not fraudulently convey the Weston property to Frank and Isabelle Gustie because Joseph held only bare record title to the property. His financial condition was not affected by either receipt of or by the retransfer of title. At the time of the First National Bank's attachment, the debtor had no interest in the property, and therefore the attachment was ineffective. *Ward v. Grant,* 9 Mass.App. at 369, 401 N.E.2d at 163.

Judgment shall enter for the defendants on the First National Bank's Complaint.

■ The Complaint brought by the Trustee seeks also to avoid the debtor's transfer to Frank Gustie as a fraudulent conveyance pursuant to the trustee's avoidance powers under Section 70e(1). This section grants the trustee the avoidance powers of actual creditors of the bankrupt who would be entitled to set aside the conveyance under state law. *J. Moore and L. King, 4A Collier on Bankruptcy,* Section 70, 71, at 778, 787 (14th ed. Supp.1982). When a trustee seeks to set aside a transfer as fraudulent under Section (1) he must show an actual creditor of the bankrupt would succeed in a fraudulent conveyance action brought under the applicable State Law.

*See Holbrook v. International Trust Co.,* 220 Mass. 150, 107 N.E. 665 (1915).

■ As previously discussed, Massachusetts law on this subject is well-established: an actual creditor of one who held only title to property which he retransferred in fulfillment of an oral trust is not entitled to challenge the reconveyance as a fraudulent transfer, *Ward v. Grant,* 9 Mass.App. 364, 401 N.E.2d 160 (1980), unless the creditor demonstrates that the conduct of the beneficiary estops him from claiming ownership as against the particular creditor. *Perkins v. Hilton,* 329 Mass. 291, 107 N.E.2d 822 (1952).

■ In this case the Trustee has produced no evidence that an actual creditor would succeed in setting aside the reconveyance, because of estoppel, or otherwise, choosing exclusively to rely on the claim of the Bank. As previously discussed, it is my conclusion that in the circumstances of this case, the Bank is not entitled to set aside the reconveyance to Frank Gustie, and therefore the Trustee, having presented no other actual creditor with a claim, cannot succeed in his Section 70e action. The Trustee has asserted no other cause of action and the Court has not determined claims not raised by the parties. This decision is limited to a determination that the Trustee, under Section 70e(1) may not avoid the conveyance as a fraudulent transfer under Massachusetts law.

Judgment shall enter for the defendants on the trustee's Complaint.