In re ASSOCIATED ENTERPRISES, INC., Debtor.

William J. Rameker, Trustee, Plaintiff,

v.

Robert L. Peterson, Defendant.

Bankruptcy No. 98–35190–7.
Adversary No. 98–3287–7.

United States Bankruptcy Court,
W.D. Wisconsin.

May 21, 1999.

Rebecca DeMarb, William J. Rameker, Murphy & Desmond, S.C., Madison, WI, for plaintiff.

Christopher W. Duren, Waunakee, WI, for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

The debtor, Associated Enterprises, filed its chapter 7 bankruptcy on October 16, 1998. The defendant, Robert L. Peterson, has been president of the debtor at all relevant times. The chapter 7 trustee has sued Peterson to obtain the property transferred to him by the debtor during 1998.

Peterson and his wife quitclaimed four parcels of real property to the debtor in 1990. At that time or subsequently, they also transferred to the debtor some shares of stock in Community National Bank and Midwest Federal Financial. On January 15, 1992, Peterson, as president, signed for the debtor a document titled "Declaration of Trust."[1] The declaration purported

---

1. The document reads:

    Declaration of Trust

    This declaration of trust is made on the Fifteenth Day of January, 1992, by Associated Enterprises, Inc. "Trustee" in favor of Robert L. Peterson, ET AL. "Beneficiary".

    The Trustee solemnly declares that it holds "Stocks/Bonds/Funds and Real Property" in trust solely for the benefit of said Beneficiary.

    The Trustee further promises the Beneficiary:

    (a) not to deal with the property in any way, except to transfer it to the Beneficiary, without the authorization of the Beneficiary; and

that the debtor, as trustee, held "Stocks/Bonds/Funds and Real Property" for the benefit of Peterson and unknown others ("Robert L. Peterson, ET AL.") as beneficiaries of the trust. Neither the debtor nor the trust ever filed a fiduciary tax return. The trust never obtained a tax identification number. The debtor took all the tax attributes of the property including claiming the real estate taxes as income tax deductions. The debtor never maintained any separate accounting for the trust.

On January 15, 1998, Peterson signed a letter (apparently addressed *to* the debtor, although Peterson asserts in the pre-trial statement that he signed it *on behalf of* the debtor) purporting to terminate the trust and requesting that the "Stocks/Bonds/Funds and Real Property" be transferred to the beneficiaries on April 1, 1998. Four quitclaim deeds were executed on April 1, 1998 and recorded on July 14, 1998. The quitclaim deeds list the debtor as the grantor and "Robert L. Peterson, ET AL." as the grantee. An unknown amount of stock was transferred on April 1, 1998. The debtor received no compensation for either transfer.

The chapter 7 trustee initiated this adversary proceeding to avoid the transfers under 11 U.S.C. § 548(a). The trustee argues that no trust was created by the declaration because the property was not adequately described and there is no grantor's signature on the declaration. The trustee also asserts that the failure of debtor to maintain the property as if it were in a trust supports the conclusion that no trust existed. The trustee further argues that because there was no trust the transfers should be avoided and the trans-

ferred property recovered for the benefit of the bankruptcy estate.

Peterson argues that a trust was created, that the real property and stocks were the corpus of that trust, and that property held by a debtor in trust for another is not part of the debtor's bankruptcy estate. Peterson concludes that transfers of the trust corpus cannot be subject to avoidance because they were not transfers of property of the debtor.

At trial, Peterson testified that a fifth parcel had also been included in the trust. No evidence relating to the disposition of the fifth parcel was received.[2] Peterson also testified that the debtor acted as both settlor and trustee for the trust. His attorney argued that the description of the property was sufficient because the settlor, the trustee and the beneficiary (which were represented by a single person, Peterson) all knew which property was included. Peterson also presented arguments that implied the presence of an oral trust, although that contention was never tied to either facts or law. In his post-trial submission, defendant asked the court to note that the quitclaim deeds of 1998 were stamped as exempt from transfer tax as being transfers from a trustee to a beneficiary.

The burden of proof to show the existence of a valid trust is on the party asserting the existence of the trust. The party must show that the acts of the settlor were sufficient to create a trust. See George T. Bogert, Trusts § 11 (6th ed.1987); citing *Prevost v. Gratz*, 6 Wheat. 481, 19 U.S. 481, 5 L.Ed. 311 (1821) and *Russell v. Fish*, 149 Wis. 122, 135 N.W. 531. Peterson has relied on the written declaration of trust which states:

> (b) to account to the Beneficiary for any money received by the Trustee, other than from Beneficiary, in connection with holding said Property.
>
> (c) on request to promptly return all said Property to Beneficiary without recourse.
>
> Signed in the presence of:

/s/ Bernice Hendrix
/s/ Robert L. Peterson, pres.
Witness
Trustee

2. According to the pretrial deposition of the defendant, the fifth parcel was sold in January 1998.

This declaration of trust is made on the Fifteenth Day of January, 1992, by Associated Enterprises, Inc. "Trustee" in favor of Robert L. Peterson, ET AL. "Beneficiary".

The Trustee solemnly declares that it holds "Stocks/Bonds/Funds and Real Property" in trust solely for the benefit of said Beneficiary.

■ The language of this declaration demonstrates a clear intention that a trust be created by Associated Enterprises, Inc. in favor of Robert L. Peterson, ET AL. to be administered by Associated Enterprises, Inc. as trustee. However, the failure to identify with certainty a trust res precludes the creation of a trust. The creation of a trust requires three elements:

> (1) A trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary.

*Sutherland v. Pierner*, 249 Wis. 462, 467, 24 N.W.2d 883 (1946). See also Restatement (Second) of Trusts § 74 (1959) ("A trust cannot be created unless there is trust property."). Here, the declaration identified both a trustee and a beneficiary,[3] but the declaration provides only a most general description of the trust property ("Stocks/Bonds/Funds and Real Property").

■ The trust res must be described with particularity sufficient to ascertain the subject property. See Restatement (Second) of Trusts § 76 (1959) ("A trust cannot be created unless the subject matter is definite or definitely ascertainable.").

The description of the property need not be a full legal description of the property, so long as "such general description is sufficient to point out the property affected with reasonable certainty." *Gates v. Paul*, 117 Wis. 170, 94 N.W. 55 (1903). In *Illinois Steel Co v. Konkel, et ux.*, the Supreme Court of Wisconsin determined that without a description "sufficiently definite and certain[4] ... [to] indicate the lands in question as the subject of the trust without the aid of parol evidence" no valid trust was created. *Illinois Steel Co. v. Konkel, et ux.*, 146 Wis. 556, 131 N.W. 842 (1911). This standard has been reiterated in Wisconsin and other state courts. See *Otjen v. Frohbach*, 148 Wis. 301, 134 N.W. 832 (1912) ("the writing employed [to create a trust]must be reasonably certain in its material terms"); *Marble v. Marble's Estate*, 304 Ill. 229, 136 N.E. 589 (1922) (finding description of trust res as "the family estate" not sufficiently certain; "If any of the[ ] necessary elements [of a trust] is not described with certainty, no trust is created."); *City Bank Farmers' Trust Co. v. Charity Organization Society of City of New York*, 238 A.D. 720, 265 N.Y.S. 267 (N.Y.App.Div.1933) (stating that one of the elements necessary to the creation of a trust is a "property sufficiently designated and identified to enable title to pass to the trustee").

■ Wisconsin courts have further elucidated the standard by stating that the trust be sufficiently definite and certain in its descriptions that "a court can deal with it in the exercise of its judicial functions and enforce it." *In re Evenson's Will*, 161 Wis. 627, 155 N.W. 145 (1915); see also *Holmes v. Walter*, 118 Wis. 409, 95 N.W. 380 (1903); *McHugh v. McCole*, 97 Wis. 166, 72 N.W. 631 (1897).

---

3. The declaration of trust also may not have defined the beneficiary with sufficient particularity. However, the parties did not discuss the beneficiary issue. Because the failure of the trust to define the trust property (as discussed infra) resolves the matter, the beneficiary issue is irrelevant.

4. Definite is defined in Black's Law Dictionary as "Fixed; determined; defined; bounded." Certain is defined as "Ascertained; precise; identified; settled; exact; definitive; clearly known; unambiguous; or, in the law, capable of being identified or made known, without liability to mistake or ambiguity, from data already given. Free from doubt."

■ The failure of the declaration to describe the trust res with sufficient specificity caused a failure of one of the necessary elements to create a valid trust as "[a] trust without subject matter is inconceivable. It can no more exist than a trust without a beneficiary." See George T. Bogert, Trusts § 25 (6th ed.1987). Thus, lacking a definite trust res, the purported trust was invalid from the start.

■ Placing real property in trust generally requires that the Statute of Frauds be satisfied. In Wisconsin, the Statute of Frauds is codified in Chapter 706 of Wisconsin Statutes. Section 706.01 provides that Chapter 706 (subject to exceptions not relevant here) "shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." As the establishment of a trust transfers legal and/or equitable title to land, Chapter 706 generally will apply to trusts. See *Healy v. Fidelity Savings Bank*, 238 Wis. 12, 298 N.W. 170 (1941). Section 706.02 states (in relevant part):

(1) Transactions under [§ 706.01] shall not be valid unless evidenced by a conveyance which:

(a) Identifies the parties; and

(b) Identifies the land; and

(c) Identifies the interest conveyed ...; and

(d) Is signed by or on behalf of each of the grantors[.]

(2) A conveyance may satisfy any of the foregoing requirements of this section:

(a) By specific reference, in a writing signed as required, to extrinsic writings in existence when the conveyance is executed; or

(b) By physical annexation of several writings to one another, with the mutual consent of the parties; or

(c) By several writings which show expressly on their faces that they refer to the same transaction, and which the parties have mutually ac-knowledged by conduct or agreement as evidence of the transaction.

■ Satisfaction of the requirements of the Statute of Frauds has been described in terms of "certainty" and "definiteness" by Wisconsin courts. See, e.g., *Zapuchlak v. Hucal*, 82 Wis.2d 184, 262 N.W.2d 514 (1978) ("property referred to in memorandum must be described to a reasonable certainty"); *Trimble v. Wisconsin Builders*, 72 Wis.2d 435, 241 N.W.2d 409 (1976) ("contract or memorandum must be reasonably definite in respect to the property conveyed"); *Wiegand v. Gissal*, 28 Wis.2d 488, 137 N.W.2d 412 (1965) ("memorandum or contract must describe with reasonable certainty the property to which it relates"). In *Zapuchlak*, the Wisconsin Supreme Court stated succinctly the issue raised when the property is not sufficiently described:

The question ... is not what reasonable men intended to convey, or what the parties know; rather, the question is what the parties to the contract in fact described in their contract or memorandum.

82 Wis.2d at 191, 262 N.W.2d 514 (1978).

■ The description of the property need not be complete on the four squares of the document; extrinsic evidence may be admitted under some circumstances. *Trimble*, 72 Wis.2d at 442, 241 N.W.2d 409. However, for extrinsic evidence to be admissible there must be "some foundation, link, or key to the extrinsic evidence" in the document. *Id.* See also *Wiegand*, 28 Wis.2d at 493, 137 N.W.2d 412; *Wadsworth v. Moe*, 53 Wis.2d 620, 193 N.W.2d 645 (1972). Here, the declaration of trust neither provided on its face a description of the property sufficient to satisfy the Statute of Frauds nor made reference to any extrinsic evidence that could have, in combination with the declaration, satisfied the statute.

■ Contrary to the general rule that trusts are subject to the Statute of Frauds, courts in Wisconsin and elsewhere have carved out an exception for oral trusts that

have been performed by the trustee.[5] See *Davis v. Kurella*, 226 Wis. 297, 276 N.W. 321 (1937) (when oral trust is executed by trustee, trustee's deed relates back to parol declaration); *Blaha v. Borgman*, 142 Wis. 43, 124 N.W. 1047 (1910) (parol declaration of trust, though unenforceable against trustee, will relate back to original agreement when trust is voluntarily executed by trustee); *Main v. Bosworth*, 77 Wis. 660, 46 N.W. 1043 (1890) (executed parol trust was valid and might be proved); *Karr v. Washburn*, 56 Wis. 303, 14 N.W. 189 (1882) (parol trust is not void, merely voidable at trustee's election); see also *In re Gustie*, 32 B.R. 466 (Bankr. D.Mass.1983) (deed relates back to oral agreement when trustee completes trust by transferring property to beneficiary); *Detrio v. Boylan*, 190 F.2d 40, 44 (5th Cir.1951) (conveyance to carry out oral trust is "upon consideration which the law recognizes, and is valid against creditors of the grantor, unless the facts are such as to give rise to the doctrine of estoppel"); *Owings v. Laugharn*, 53 Cal.App.2d 789, 128 P.2d 114 (1942) (oral trust, carried out by trustee, was valid); *Davis v. United States*, 27 F.Supp. 698 (S.D.N.Y.1939) (later writing by trustee admitting existence of trust validates oral trust). The courts have consistently used "performance" or "execution" of the trust to mean the transfer of the trust property by the trustee to the beneficiary.

The Wisconsin cases cited above emphasize the moral obligation of the trustee to effect the trust obligation he accepted from the settlor. While that may have comforted courts concerned about trusts undertaken on behalf of others, it seems to lack force in this self settled trust in which the settlor and trustee are a corporation wholly owned by the named beneficiary.

█ The cases have made clear that for an oral trust to exist, it must be proved by clear and convincing evidence. See,

e.g., *Nehls v. Meyer*, 7 Wis.2d 37, 95 N.W.2d 780 (1959); *Swazee v. Lee*, 259 Wis. 136, 47 N.W.2d 733 (1951). As the defendant did not actually present evidence that an oral trust was established, that burden has not been met.

The oral trust case most similar to ours is *In re Gustie*, 32 B.R. 466 (Bankr. D.Mass.1983). While the underlying case and statutory law of Massachusetts is somewhat different from Wisconsin's, the facts presented in the case are substantially similar. A trustee under the Bankruptcy Act and a creditor sought to set aside as fraudulent a transfer of real property from the debtor to his brother. The transfer was executed before the bank had attached the debtor's interest in the property. The brother and the debtor both asserted that the transfer was made as fulfillment of an oral trust established by the brother as settlor and beneficiary with the debtor as trustee. The court noted that, under Massachusetts law, an oral trust (while not enforceable against the trustee) may be performed by the trustee and once performance is complete, the trust becomes valid and enforceable as if there had been a writing in the first place. The court further noted that in Massachusetts and other states it is well settled that "creditors of the trustee under [a] performed oral trust cannot attach the reconveyance to the beneficiary as a fraudulent conveyance under either the insolvency or intent provisions of the fraudulent conveyance statute."

The bankruptcy court noted, however, that Massachusetts courts will not hold creditors subject to a beneficiary's interest where to do so would be against public policy. The principal example given is where the beneficiary "[holds] the oral trustee out as the sole owner, knowing that creditors would rely on the trustee's ownership, and creditors did in fact extend credit based on the trustee's record title." The court then noted the exception where the beneficiary occupies the property.

---

5. The presence of the declaration of trust belies reliance on the oral creation of a trust in the case and Peterson did not directly argue that an oral trust had been created, but it is considered here because a statement in argument by counsel suggested its relevance, and because of the slightly different standards that apply.

Applying the first step of the *Gustie* analysis to the present case, it would appear that the oral trust (if proved) might be valid and enforceable. The second part of the analysis presents a greater problem for Peterson. According to his testimony, most of Associated's debts arise from lawsuits related to the real property. It is improbable that the plaintiffs in those cases would have sued only Associated if they had knowledge of Peterson's beneficial interest in the land. Peterson allowed the plaintiffs to operate under the mistaken impression that the public record accurately reflected the ownership of the property. This would only apply to the three parcels which are not Peterson's homestead, as the occupancy exception would exclude it.

At no time was the property claimed to be subject to the trust transferred into the trust. Assuming that a trust was created by the declaration there is no evidence that any property was transferred to the trust subsequent to the execution of the declaration.

Peterson presented no evidence as to the disposition of the stock. He testified that he had purchased the stock in his individual capacity and then placed it into the trust. This relationship contradicts other testimony that the debtor acted as settlor. Lacking evidence adequately describing any transactions related to the stock, the defendant did not meet his burden of proving the stock was in trust.

 Defendant argues that the property of the trust was not property of the debtor in the year before filing of the petition under 11 U.S.C. § 541(b) or (d). The relevant portion of § 541(b) provides: "Property of the estate does not include— (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Section 541(d) provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Because the trust fails, so does this argument. The transfers were made to an insider within one year before the petition was filed. The defendant is the president of the debtor corporation and a consummate insider. All relevant transfers took place in 1998 and the petition was filed in October 1998. The debtor was insolvent at the time of the transfers or the transfers caused the debtor to become insolvent. The debtor's bankruptcy schedules list total assets of about $14,000 and liabilities of almost $23,000 less than six months after the transfers took place. Finally, the debtor received no consideration for the transfers. This is obviously less than reasonably equivalent value.

The trustee may have judgment as demanded in the complaint. It shall be so ordered.